RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

-------------------

JOSE LUIS SERRATO-SOTO,

　　　　　　　　　　　*Petitioner,*

　　　*v.*

ERIC H. HOLDER, JR., Attorney General,

　　　　　　　　　　　*Respondent.*

No. 08-4063

-------------------

On Appeal from the Board of Immigration Appeals.
No. A075 903 417.

Submitted: April 23, 2009

Decided and Filed: May 28, 2009[*]

Before: SUHRHEINRICH, BATCHELDER, and SUTTON, Circuit Judges.

-------------------

**COUNSEL**

**ON BRIEF:** Barry L. Frager, THE FRAGER LAW FIRM, P.C., Memphis, Tennessee, for Petitioner. Leslie McKay, Kristin K. Edison, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

-------------------

**OPINION**

-------------------

SUHRHEINRICH, Circuit Judge. Jose Serrato-Soto, under an order of removal to Mexico, petitions for review of a final order of the Board of Immigration Appeals (BIA), which held that Serrato-Soto was ineligible for voluntary departure because he was convicted of a crime involving moral turpitude. Serrato-Soto argues that the BIA erred in concluding that his earlier conviction in Mississippi state court for fraudulent use of a social

-------------------

[*] This decision was originally issued as an "unpublished decision" filed on May 28, 2009. On June 30, 2009, the court designated the opinion as one recommended for full-text publication.

security number or identifying information to obtain goods was a crime involving moral turpitude as a matter of law. We disagree and, accordingly, **DENY** the petition.

## I. Background

Serrato-Soto is a native and citizen of Mexico who illegally entered the United States in 1993.[1] On January 7, 2004, Serrato-Soto was convicted of fraudulent use of identification in Mississippi state court.[2] On January 8, 2004, the Department of Homeland Security ("DHS") lodged a Notice to Appear before the Executive Office of Immigration Review in Memphis, Tennessee, charging Serrato-Soto as removable for being present in the United States without having been admitted or paroled pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i).

On July 13, 2004, Serrato-Soto appeared at a preliminary hearing before an IJ. Serrato-Soto admitted the factual allegations contained in his Notice to Appear and conceded removability. Serrato-Soto also asked for an indefinite continuance to permit the adjudication of a labor certificate, which the IJ denied. Serrato-Soto further requested "pre-completion" voluntary departure in lieu of removal proceedings. *See* 8 U.S.C. § 1229c(a)(1) (permitting an alien to voluntarily depart the United States at the alien's own expense prior to the completion of removal proceedings). However, because Serrato-Soto chose to reserve appeal of the denial of the continuance, the IJ held that he was precluded from voluntary departure. *See Matter of Cordova*, 22 I. & N. Dec. 966, 969 (B.I.A. 1999) (holding that pre-completion voluntary departure was available to an alien similarly situated to Serrato-Soto but that the alien must waive appeal of all issues); 8 C.F.R. § 1240.26(b)(1)(i)(D) (an alien may be granted voluntary departure only if, *inter alia*, he waives appeal of all issues).

---

[1] Serrato-Soto testified at a July 12, 2006 removal hearing that he entered in 1993, but the charge contained in his Notice to Appear lists him as entering "on or about 2000."

[2] Serrato-Soto was also convicted of prostitution in Wisconsin in 1995 and theft in Texas in 1999.

Serrato-Soto appealed to the BIA. On December 2, 2005, the BIA remanded for a hearing on Serrato-Soto's possible eligibility for "post-completion" voluntary departure.

On July 12, 2006, the IJ issued an oral decision denying Serrato-Soto's application for voluntary departure on the merits and ordering him removed to Mexico, finding that Serrato-Soto's 2004 conviction in Mississippi state court for fraudulent use of a social security number was a crime involving moral turpitude, which precluded Serrato-Soto from demonstrating the requisite good moral character necessary for voluntary departure. Serrato-Soto again appealed to the BIA, this time arguing that the 2004 conviction did not involve moral turpitude. On July 31, 2008, the BIA, *per curiam*, adopted and affirmed the IJ's decision.

## II. Analysis

### A. Jurisdiction

Serrato-Soto timely filed his petition for review on August 28, 2008, within 30 days of the BIA's July 31, 2008 order. *See* 8 U.S.C. § 1252(b)(1). Pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), this court lacks jurisdiction to review the denial of relief under 8 U.S.C. § 1229c, the statutory authority for voluntary departure. However, § 1252(a)(2)(D) restores jurisdiction to circuit courts to review constitutional claims and questions of law raised in a petition for review of a removal order. 8 U.S.C. § 1252(a)(2)(D); *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006). Serrato-Soto's argument presents a question of law, namely whether Serrato-Soto's conviction for fraudulent use of a social security number or identifying information, in violation of Mississippi state law, is a crime involving moral turpitude. Accordingly, this Court has jurisdiction.

**B.  Standard of Review**

Where, as here, "the BIA expressly adopts and affirms the IJ's decision but adds comments of its own, we directly review the decision of the IJ while also considering the additional comments made by the [BIA]." *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007).  We generally accord *Chevron* deference to the BIA's reasonable construction of the INA, *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908 (6th Cir. 2008), which requires us to uphold the BIA's construction unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984).  No deference is given, however, to the BIA's interpretation of a state criminal statute; that issue is reviewed de novo.  *Knapik v. Ashcroft*, 384 F.3d 84, 87-88 (3d Cir. 2004).

**C.  Statutory Eligibility for Post-Completion Voluntary Departure**

Section 240B(b)(1) of the INA, 8 U.S.C. § 1229c(b)(1), provides authority for an alien to seek post-completion voluntary departure.[3]  The alien may voluntarily depart at his own expense if: (1) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served; (2) the alien is, and has been, a person of good moral character for at least five years immediately preceding the application for voluntary departure; (3) the alien is not deportable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) or 1227(a)(4); and (4) the alien establishes by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.   INA  §§  240B(b)(1)(A)-(D);  8  U.S.C. §§ 1229c(b)(1)(A)-(D).

The INA does not define "good moral character" but excludes eight categories of aliens who may *not* demonstrate good moral character.  *See* INA §§ 101(f)(1)-(9); 8 U.S.C. §§ 1101(f)(1)-(9).  One category includes "[a] member of one or more of the classes of persons . . . described in . . . [8 U.S.C. §§ 1182(a)(2)(A), (B)]." INA

---

[3]INA § 240B(a)(1), 8 U.S.C. § 1229c(a)(1), which is not implicated here, provides the authority for an alien to voluntarily depart the United States, at the alien's own expense, *prior* to the conclusion of removal proceedings.

§ 101(f)(3); 8 U.S.C. § 1101(f)(3).  Section 1182(a)(2)(A)(i), in turn, includes "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . ." 8 U.S.C. § 1182(a)(2)(A)(i)(I); INA § 212(a)(2)(A)(i).  "Moral turpitude" is not defined in the INA.

Serrato-Soto does not dispute that his 2004 conviction occurred within the five-year period before his July 2006 application for voluntary departure.  Therefore, we need only resolve the question of whether Serrato-Soto's 2004 conviction for fraudulent use of identification is a crime involving moral turpitude.

### D.  Serrato-Soto's 2004 Conviction

The BIA has held that "a criminal offense involves 'moral turpitude' if the relevant statute defines the offense in such a manner that it necessarily entails conduct on the part of the offender that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." *Matter of Kochlani*, 24 I. & N. Dec. 128, 129  (B.I.A. 2007).  And "crimes that have a specific intent to defraud as an element have always been found to involve moral turpitude."  *Id.* at 130.  Moreover, as the Supreme Court has explained, "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Jordan v. De George*, 341 U.S. 223, 229 (1951); *see also Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002) ("In the wake of *Jordan*, the courts of appeals have interpreted 'moral turpitude' as including a wide variety of crimes that involve some fraud or deceit.").

To determine whether Serrato-Soto's crime involves moral turpitude, this Court employs the "categorical approach," whereby we consider not whether the actual conduct constitutes a crime involving moral turpitude, but "whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude." *Cuevas-*

*Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186-87 (2007).  Accordingly, "we look to the elements of the statutory state offense, not to the specific facts.  We rely on what the convicting court must necessarily have found to support the conviction and not to other conduct in which the defendant may have engaged in connection with the offense."  *Wilson v. Ashcroft*, 350 F.3d 377, 381-82 (3d Cir. 2003) (citation and quotation omitted); *see also Matter of Short*, 20 I. & N. Dec. 136, 137 (B.I.A. 1989) ("It is the inherent nature of the crime as defined by statute and interpreted by the courts and as limited and described by the record of conviction which determines whether the offense is one involving moral turpitude.").

Serrato-Soto was convicted under Mississippi Code § 97-19-85.  That section, titled "Fraudulent use of social security number or identifying information to obtain goods," reads as follows:

> (1) Any person who shall make or cause to be made any false statement or representation as to his or another person's identity, Social Security account number, credit card number, debit card number or other identifying information for the purpose of fraudulently obtaining or with the intent to obtain goods, services or any thing of value, shall be guilty of a felony and upon conviction thereof for a first offense shall be fined not more than Five Thousand Dollars ($5,000.00) or imprisoned for a term not to exceed five (5) years, or both.  For a second or subsequent offense such person, upon conviction, shall be fined not more than Ten Thousand Dollars ($10,000.00) or imprisoned for a term not to exceed ten (10) years, or both.  In addition to the fines and imprisonment provided in this section, a person convicted under this section shall be ordered to pay restitution as provided in Section 99-37-1 et seq.
>
> (2) A person is guilty of fraud under subsection (1) who:
>
>> (a) Shall furnish false information wilfully, knowingly and with intent to deceive anyone as to his true identity or the true identity of another person;
>>
>> (b) Wilfully, knowingly, and with intent to deceive, uses a Social Security account number to establish and maintain business or other records; or

(c) With intent to deceive, falsely represents a number to be the Social Security account number assigned to him or another person, when in fact the number is not the Social Security account number assigned to him or such other person; or

(d) Knowingly alters a Social Security card, buys or sells a Social Security card or counterfeit or altered Social Security card, counterfeits a Social Security card, or possesses a Social Security card or counterfeit Social Security card with intent to sell or alter it.

MISS. CODE ANN. § 97-19-85.

Serrato-Soto's record of conviction does not cite any particular subsection under which he was charged and convicted. Even so, under any of the subsections, as defined in the statute, Serrato-Soto must have acted "willfully," "knowingly," or "with intent to deceive." *Id.* Thus, Serrato-Soto was convicted of a crime that, in the ordinary case, involves dishonesty as an essential element. *See Duenas-Alvarez*, 549 U.S. at 193; *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 697-98 (A.G. 2008).

A person convicted under this Mississippi statute must also have used the personal information in the course of some action with the intent of committing a crime involving moral turpitude, including furnishing said information to another to hide a person's true identity, using the personal information for business purposes, falsely portraying a social security number as his own, altering a social security card, or buying or selling a legitimate or counterfeit social security card. MISS. CODE ANN. §§ 97-19-85(2)(a)-(d). As such, Serrato-Soto's conviction under this statute is outside the scope of cases involving mere unlawful *possession* of illegal documents, which the BIA has held does not involve moral turpitude. *See, e.g., Matter of Serna*, 20 I. & N. Dec. 579, 585-86 (B.I.A. 1992) (holding that mere possession of illegal documents, without intent to use said documents fraudulently or unlawfully, is not a crime involving moral turpitude). Accordingly, because Serrato-Soto's crime has the intent to defraud and some affirmative action beyond mere possession as essential elements, his crime falls within this Circuit's understanding of moral turpitude. *See, e.g., Kabongo v. INS*, 837 F.2d 753, 758 (6th Cir. 1988) (finding that alien's convictions for making false statements and obtaining government funds by fraud involved moral turpitude because

the alien made dishonest statements); *Zaitona v. INS*, 9 F.3d 432, 437-38 (6th Cir. 1993) (agreeing with a BIA determination that an alien's conviction for making false statements on a driver's license application, in violation of Michigan statute, involved moral turpitude because an element of the crime required the alien to "knowingly make a false statement or knowingly conceal a material fact," which amounted to fraud).

Serrato-Soto renews his argument, made unsuccessfully before the BIA, that we should exempt misuse of social security numbers from the category of crimes involving moral turpitude based upon the Ninth Circuit's decision in *Beltran-Tirado v. INS*, 213 F.3d 1179 (9th Cir. 2000).[4]  In *Beltran-Tirado*, Beltran was convicted of falsely representing a social security number in violation of 42 U.S.C. § 408(g)(2) (recodified at 42 U.S.C. § 408(a)(7)(B)).  *Id.* at 1182.  The United States Immigration and Naturalization Service moved to deport her.  Beltran sought lawful permanent residence by applying for "registry" under 8 U.S.C. § 1259.[5]  The BIA denied her request on the ground that her use of a false social security number constituted a crime involving moral turpitude, which precluded her from demonstrating the statutory requirement of good character.  The Ninth Circuit reversed, holding that the use of a false social security number to establish credit and work in the United States did not involve moral turpitude. The court relied on the legislative history of 42 U.S.C. § 408(d) (recodified at 42 U.S.C. § 408(e)), which was added by amendment.  That section provides that aliens who had been granted permanent resident status under the amnesty or registry statutes were

---

[4]Serrato-Soto also argues that his crime of using another person's identification is *malum prohibitum* (prohibited by statute) instead of *malum in se* (inherently wrong), which removes it from the category of crimes involving moral turpitude because *malum prohibitum* crimes do not necessarily involve a specific evil intent.  However, the BIA has explained that a crime may qualify as one of moral turpitude even if the offense is *malum prohibitum*.  *See Matter of Torres-Varela*, 23 I. & N. Dec. 78, 83 (B.I.A. 2001) ("[A]lthough crimes involving moral turpitude often involve an evil intent, such a specific intent is not a prerequisite to finding that a crime involves moral turpitude. . . . While it is generally the case that a crime that is 'malum in se' involves moral turpitude and that a 'malum prohibitum' offense does not, this categorization is more a general rule than an absolute standard.")

[5]"The registry statute, 8 U.S.C. § 1259, is a remedial provision designed to regularize the status of long-resident aliens illegally in the country." *Beltran-Tirado*, 213 F.3d at 1183 (citation and quotation omitted).  The statute applies to an alien who (1) entered the United States prior to January 1, 1972, (2) has resided in the United States continuously since that time, (3) is a person of "good moral character," and (4) is not ineligible for citizenship.  8 U.S.C. § 1259.

exempted from prosecution for certain past use of social security numbers.  42 U.S.C. § 408(e); *Beltran-Tirado*, 213 F.3d at 1183.

In explaining the purpose behind the exemption from prosecution, the Ninth Circuit cited Congress's conference committee report:

> The Conferees intend that this exemption apply only to those individuals who use a false social security number to engage in otherwise lawful conduct. . . . The Conferees believe that individuals who are provided exemption from prosecution under this proposal should not be considered to have exhibited moral turpitude with respect to the exempted acts for purposes of determinations made by the Immigration and Naturalization Service.

*Id.* (quoting H.R. Rep. No. 101-964, at 948 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2374, 2653).  The Ninth Circuit recognized that the amendment did not apply to Beltran but applied the conference committee's rationale behind the amendment to find that Beltran's crimes did not involve moral turpitude.  213 F.3d at 1184.

The Fifth Circuit, in *Hyder v. Keisler*, 506 F.3d 388 (5th Cir. 2007), recently addressed an analogous issue involving an alien convicted of misuse of a social security number obtained by fraud and declined to follow *Beltran-Tirado*.  As that court reasoned, *Beltran-Tirado* "appears to have expanded a narrow exemption beyond what Congress intended." *Id.* at 393.  The amendment and legislative history upon which the Ninth Circuit relied applies to aliens who have already been granted status as lawful permanent residents and only applies to future criminal prosecutions.  42 U.S.C. § 408(e).  "The mere fact that Congress chose to exempt a certain class of aliens from prosecution for certain acts does not necessarily mean that those acts do not involve moral turpitude in other contexts." *Hyder*, 506 F.3d at 393.

We agree with the Fifth Circuit's decision and reasoning in *Hyder* and decline to follow *Beltran-Tirado*.  Additionally, we note that Serrato-Soto is not a lawful permanent resident and, thus, does not fit within the classification of aliens described in 42 U.S.C. § 408(e) as contemplated in *Beltran-Tirado*.  And in declining to follow *Beltran-Tirado*, we do not disturb established Sixth Circuit precedent finding crimes of

fraud or dishonesty within the class of crimes involving moral turpitude.  *See, e.g., Kabongo*, 837 F.2d at 758; *Squires v. INS*, 689 F.2d 1276, 1278 n.3 (6th Cir. 1982); *Zaitona*, 9 F.3d at 437-38.

## III.  Conclusion

For the foregoing reasons, we **DENY** the petition.