**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0217n.06

No. 10-3873

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Mar 04, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROMAN NOVATCHINSKI, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | OPINION |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Before:  **WHITE, STRANCH, and FARRIS,**[*] **Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.**  Petitioner Roman Novatchinski, a citizen of Ukraine, pled guilty in September 2007 to violating 15 U.S.C. § 645(a) by knowingly making a false statement for the purpose of influencing the action of the Small Business Administration (SBA).  At the time he pled guilty, he was in removal proceedings for remaining in the United States longer than permitted.  Novatchinski sought the relief of cancellation of removal.  But because the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) concluded that Novatchinski had been convicted of a crime involving moral turpitude (CIMT), and thus was ineligible for cancellation of removal, he was ordered removed.

Novatchinski petitions this court for review.  For the reasons set forth below, we DENY his petition.

_____

[*]The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

## I. BACKGROUND

The relevant facts are undisputed. Novatchinski was admitted into the United States in October 1990 as a nonimmigrant tourist who was authorized to stay until April 1991. He overstayed, and in August 2007, the Department of Homeland Security began removal proceedings, alleging that he should be removed under 8 U.S.C. § 1227(a)(1)(B) because he overstayed. Novatchinski admitted the allegations and conceded removability. He filed, in relevant part, an application for special cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA).

While his removal proceedings were pending, he pled guilty in September 2007 to violating 15 U.S.C. § 645(a) by knowingly making a false statement for the purpose of influencing the action of the SBA. In his plea agreement, he admitted that in August 2001 he

> stated and represented in an SBA statement of Personal History Form that he was the "100%" owner of Palace One Stop Shop, LLC, whereas in truth and as [Novatchinski] well-knew, co-defendant Wladimir Mizemi was a 50% partner in Palace One Stop Shop, LLC. The statement was made for the purpose of influencing the action of the SBA.

Novatchinski was seeking a $1.3 million loan from the SBA to buy a gas station, and he falsely represented that he was the sole owner of Palace One Stop Shop so that he could receive a SBA-guaranteed loan.[1] He received a SBA-guaranteed loan of over $1.3 million and defaulted on this loan after making two payments. The SBA then paid a claim of over $1 million to the lender.

---

[1] The co-owner of Palace One Stop Shop had already obtained a SBA loan to buy a different gas station, a fact which precluded him from receiving another SBA loan. So Novatchinski falsely claimed that he was the sole owner of Palace One Stop Shop to conceal this fact from the SBA and obtain a loan.

Relevant to this appeal, the IJ determined that Novatchinski was not eligible for special cancellation of removal under NACARA because this conviction constituted a CIMT. The BIA dismissed Novatchinski's appeal of the IJ decision, concluding that Novatchinski had been convicted of a CIMT and was therefore ineligible for special cancellation of removal. In so holding, the BIA rejected Novatchinski's argument that his crime does not categorically involve moral turpitude because "a conviction under 15 U.S.C. § 645(a) does not require that the misrepresentation be material." Novatchinski timely petitioned this court for review of the BIA's decision.

## II. ANALYSIS

The issue on appeal is the legal issue of whether Novatchinski's conviction under 15 U.S.C. § 645(a) is a CIMT. *See Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009) (holding that deciding whether an alien's conviction under state law constitutes a CIMT is a legal issue). If it is, then he is ineligible for special cancellation of removal under NACARA because he cannot establish the requisite good moral character. *See* 8 C.F.R. § 240.66(c) (mandating that an alien must demonstrate good moral character to be eligible for special cancellation of removal); 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I) (providing that an alien does not have good moral character if he or she has been convicted of a CIMT). Because the BIA issued a separate opinion rather than summarily affirming the IJ's decision, we review the BIA's decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

### A.     *Chevron* deference

This court generally accords *Chevron* deference to the BIA's reasonable interpretation of the Immigration and Nationality Act (INA). *Serrato-Soto*, 570 F.3d at 688. In particular, we defer to

the BIA's interpretation of the term "CIMT," *Kellerman v. Holder*, 592 F.3d 700, 702–03 (6th Cir. 2010); *accord Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (per curiam), but review de novo the BIA's conclusion that a particular crime of conviction fits within that interpretation. *Kellerman*, 592 F.3d at 703; *Rodriguez*, 451 F.3d at 63. Because Novatchinski contests the BIA's interpretation of the phrase *moral turpitude* rather than its interpretation of 15 U.S.C. § 645(a), his arguments are reviewed under the *Chevron* framework. *See Michel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000) (reviewing the alien's arguments under the *Chevron* framework because he challenged the BIA's interpretation of *moral turpitude* rather than its construction of the criminal statute involved).

Applying *Chevron*, we must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). Congress has not. The INA does not define *moral turpitude*. *Serrato-Soto*, 570 F.3d at 689.

The second and final step under *Chevron* requires that we defer to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. An agency's interpretation is "arbitrary and capricious" when

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007) (quoting *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Novatchinski argues that a false-statement crime is categorically a CIMT only if fraud or materiality of the false statement is an essential element. Because neither are essential elements under 15 U.S.C. § 645(a), he contends that he has not committed a CIMT. Although the "exact definition of 'moral turpitude' . . . has never been fully settled," the BIA has explained that it

> "refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Singh v. Holder*, 321 F. App'x 473, 477 (6th Cir. 2009) (quoting *Matter of Torres-Varela*, 23 I. & N. Dec. 78, 83 (BIA 2001)). "Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *See Matter of Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999). "Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind." *Id.*

*Kellerman*, 592 F.3d at 703.

Applying this general concept to cases where the alien knowingly made false statements to the government, the BIA has held that crimes "impair[ing] or obstruct[ing] an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means" involve moral turpitude. *Matter of Flores*, 17 I. & N. Dec. 225, 229 (BIA 1980); *accord Rodriguez*, 451 F.3d at 63. Put another way, a crime is morally turpitudinous if it involves "an affirmative act calculated to deceive the government." *Id.* at 229; *accord Rodriguez*, 451 F.3d at 64.

In *Flores*, the BIA decided that "the crime of uttering and selling false and counterfeit papers relating to registry of aliens is one involving moral turpitude." *Id*. at 228. Though that criminal statute did not include fraud or materiality of the false statement as essential elements, *see* 18 U.S.C.

§ 1426(b), the BIA reasoned that knowingly committing such an act "inherently involves a deliberate deception of the government and an impairment of its lawful functions." 17 I. & N. Dec. at 230. Since "fraudulent conduct is implicit in the statute," *id*., the statute did not need to "include the usual phraseology concerning fraud" for the offense to involve moral turpitude, *id.* at 228.

The BIA continued this logic in *Matter of Jurado-Delgado*, which held that a state conviction for unsworn falsification to authorities involved moral turpitude even though the statute did not require that the written false statement be material. 24 I. & N. Dec. 29, 34–35 (BIA 2006). Relying on its prior holding in *Flores*, the BIA reasoned that the statute required the state to prove that the defendant intended to mislead a public official in performing his official function by knowingly making a false statement. *Id.* As in *Flores*, the crime involved deliberately deceiving the government and impairing its lawful function. *Id.*

Circuit-court precedent supports the BIA's view that CIMTs include crimes that involve deliberately deceiving the government and impairing its lawful function. In *Rodriguez*, the Second Circuit deferred to this interpretation because it found the BIA's interpretation was reasonable. *Rodriguez*, 451 F.3d at 63. *Rodriguez* then analyzed de novo whether the alien's conviction for violating 18 U.S.C. § 1542 (which prohibits making a false statement in an application for a passport) fell within the BIA's interpretation of a CIMT. *Id.* Even though the statute did not require fraud or materiality as essential elements, *Rodriguez* held that a conviction under the statute was categorically a CIMT because it "involves deceit and an intent to impair the efficiency and lawful functioning of the government. This alone is sufficient to categorize a crime as a CIMT." *Id.* at 64. Similarly, the Seventh Circuit observed that "almost all courts have held that intentionally deceiving

the government involves moral turpitude." *Ghani v. Holder*, 557 F.3d 836, 840–41 (7th Cir. 2009) (internal quotation marks omitted); *accord Omagah v. Ashcroft*, 288 F.3d 254, 262 (5th Cir. 2002). The Eleventh Circuit set the bar even lower when it remarked that generally "a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (per curiam) (internal quotation marks omitted). The reason is obvious: "[W]e do not classify a prevaricator as a person of good moral character. Certainly mendacity is not a virtue." *Ghani*, 557 F.3d at 841 n.3 (internal quotation marks omitted).

Moreover, as the government correctly notes, "nearly every court to consider the issue has concluded that crimes involving willful false statements are turpitudinous." *Ghani*, 557 F.3d at 841; *accord Rodriguez*, 451 F.3d at 64; *Montero-Ubri v. INS*, 229 F.3d 319, 321(1st Cir. 2000) (holding that a conviction for using a false driver's license—as opposed to merely possessing one—is a CIMT because the "attempt at deceit is inherent in this act"); *Kabongo v. INS*, 837 F.2d 753, 758 (6th Cir. 1988) (holding that, "[u]nder the facts of the present case, where petitioner has acknowledged his false statements and the statements made to defraud the United States Government, we find that the convictions may be considered as involving moral turpitude").

Although the crime at issue in the Sixth Circuit *Serrato-Soto* case did not require that Serrato-Soto deceive the government, its holding is consistent with the BIA's interpretation that a crime is morally turpitudinous if it involves "an affirmative act calculated to deceive the government." *Flores*, 17 I. & N. Dec. at 229; *accord Rodriguez*, 451 F.3d at 64. In *Serrato-Soto*, this court found that making a false statement concerning personal identifying information (such as a Social Security account number or a credit-card number) with the intent to obtain goods, services,

or anything of value is categorically a CIMT. *Serrato-Soto*, 570 F.3d at 690–91. Although the statute at issue used the word *fraud* in defining the offense, it defined *fraud* as requiring that the perpetrator act "willfully, knowingly, or with intent to deceive." *Id.* at 690 (internal quotation marks omitted). So "Serrato-Soto was convicted of a crime that . . . involves dishonesty as an essential element." *Id.* Because the statute also required some type of affirmative action beyond mere possession of illegal documents, this court held that Serrato-Soto's crime involved moral turpitude. *Id.* at 690–91. An affirmative act plus deception was therefore enough to constitute a CIMT, just as the BIA had previously determined. *Compare id. with Flores*, 17 I. & N. Dec. at 229.

As the above precedent demonstrates, the BIA has *reasonably* interpreted a CIMT to include crimes that involve deliberately deceiving the government and impairing its lawful function. We must defer to that interpretation under *Chevron* because where, as here, the statute is silent or ambiguous on the issue the court is analyzing—the INA does not define *moral turpitude*—"the question for the court [is] whether the agency's answer is based on a permissible construction of the statute."[2] *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron*, 467 U.S. at 843).

---

[2]Novatchinski argues that we should not accord *Chevron* deference to the BIA's interpretation of *moral turpitude* in *Jurado* because that decision, which explicitly holds that materiality is not required for a false-statement crime to involve moral turpitude, represents a sharp and sudden break from prior BIA decisions. This argument is unpersuasive. More than 26 years earlier, the BIA held in 1980 that a conviction for deliberately deceiving the government and impairing its lawful function involves moral turpitude. *See Flores*, 17 I. & N. Dec. at 229. This holding on its own supports the BIA's conclusion in this case that a conviction under 15 U.S.C. § 645(a) constitutes a CIMT. The Second Circuit accorded *Chevron* deference to the interpretation of *moral turpitude* advanced in *Flores*. *Rodriguez*, 451 F.3d at 63. Moreover, the case Novatchinski relies on, *Gao v. Jenifer*, 185 F.3d 548 (6th Cir. 1999), is distinguishable. When the INS decided Gao's case, it lacked a consistent interpretation of the controlling statutory language. *Id.* at 556–57. By contrast, the BIA followed 26 years of consistent precedent when it decided *Jurado*.

**B.      15 U.S.C. § 645(a)**

The next step in the analysis is to determine under de novo review whether 15 U.S.C.

§ 645(a) falls within the BIA's interpretation of a CIMT. *Rodriguez*, 451 F.3d at 63. To determine

whether a crime is a CIMT, we use the "categorical approach," which focuses on whether a

conviction under the statute in the abstract must necessarily be a CIMT rather than on whether the

alien's actual conduct constitutes a CIMT. *Serrato-Soto*, 570 F.3d at 689. "Accordingly, we look

to the elements of the statutory . . . offense, not to the specific facts. We rely on what the convicting

court must necessarily have found to support the conviction and not to other conduct in which the

defendant may have engaged in connection with the offense." *Id.* at 690 (internal quotation marks

omitted). If a conviction under the statute is not necessarily a CIMT, then we employ the "modified

categorical approach," by "conduct[ing] a limited examination of documents in the record to

determine whether the particular offense for which the alien was convicted constitutes a CIMT."

*Kellerman*, 592 F.3d at 704.

Novatchinski was convicted under § 645(a), which is found in Chapter 14A of Title 15 of

the United States Code. Chapter 14A establishes the Small Business Administration, sets forth the

law governing its operation, and includes provisions to promote small business through other

departments of the government. *See* 15 U.S.C. §§ 631–657g. Section 645(a) provides that

> [w]hoever makes any statement knowing it to be false, or whoever willfully
> overvalues any security, for the purpose of obtaining for himself or for any applicant
> any loan, or extension thereof by renewal, deferment of action, or otherwise, or the
> acceptance, release, or substitution of security therefor, or for the purpose of
> influencing in any way the action of the [Small Business] Administration, or for the
> purpose of obtaining money, property, or anything of value, under this chapter, shall

> be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.

The first element requires the perpetrator to make a knowing false statement or to willfully overvalue any security.[3] Either option involves deliberate deception. The second element specifies the purpose for which the perpetrator must have engaged in the deliberate deception. Each possible purpose involves impairing the lawful function of government (either the SBA or some other department). Crimes under the statute therefore necessarily involve deliberately deceiving the government and impairing its lawful function. Because such crimes fall within the BIA's definition of a CIMT, *see Flores*, 17 I. & N. Dec. at 229, Novatchinski has committed a CIMT.

Novatchinski's conviction of a crime involving moral turpitude means that he cannot establish the good moral character necessary to be eligible for special cancellation of removal under NACARA. *See* 8 C.F.R. § 240.66(c) (establishing that an alien must demonstrate good moral character to be eligible for special cancellation of removal); 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I) (providing that an alien does not have good moral character if he or she has been convicted of a CIMT). We therefore deny his petition for review.

### III. CONCLUSION

For the above reasons, we DENY Novatchinski's petition for review.

---

[3] A knowing false statement or a willful overvaluing of any security could each be further broken down into two subparts: knowing and false statement, and willful and overvaluing any security, respectively.