**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2014[*]
Decided April 18, 2014

**Before**

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-3214

| | |
|---|---|
| EYAD MOHAMAD AWAD, <br> *Petitioner,* | Petition for Review of an Order of the <br> Board of Immigration Appeals. |
| *v.* | A041 665 965 |
| ERIC H. HOLDER, JR., <br> Attorney General of the United States, <br> *Respondent*. | |

**O R D E R**

Eyad Awad challenges the denial of his applications for asylum and withholding of removal, maintaining that if removed to Jordan he will be killed by family members for abandoning Islam and converting to Judaism. The Board of Immigration Appeals upheld the denial based on the immigration judge's finding that Awad's testimony was uncorroborated and not credible. We dismiss the petition for review.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the petition is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Awad was born in Iraq and spent the earliest years of his life in Jordan. At the age of 6 he legally entered the United States with his family, but he was charged with removability in 2012, at the age of 31, based on his Illinois convictions for retail theft and robbery. *See* 720 ILCS 5/16A-3(a), 5/18-1(a) (2010). The immigration judge concluded that Awad's conviction for retail theft, for which he was sentenced to two years in prison, is a conviction for an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(G) (defining "theft offense … for which the term of imprisonment [is] at least one year" as aggravated felony), and ordered him removed to Iraq. Although initially Awad did not challenge the order of removal, he moved to reopen the proceedings when he learned that the United States was seeking travel documents to send him to Jordan, where an older brother and his extended family (and possibly his father) reside. The immigration judge reopened the proceedings, and Awad applied for asylum and withholding of removal, asserting that he converted to Judaism in 2008 and, as a consequence, will be killed by irate family members if removed to Jordan.

At his hearing before the immigration judge, Awad testified that he began doubting his family's Muslim faith around the age of eleven, leading his father to beat him so badly that he was removed from his family home for three years by the Illinois Department of Children and Family Services. During this period, he said, he grew close to a Jewish counselor at a child-welfare facility. After that, he explained, he eventually converted to Judaism so that he could marry his Jewish girlfriend. He added that his younger brother warned him that his family was angry about his girlfriend and his conversion. Awad did not produce evidence to corroborate his family situation. Nor did he submit evidence corroborating his conversion. He maintained that his girlfriend had thrown away his conversion certificate when they broke up after his arrests. He gave the address of Temple Sholom in Chicago as the synagogue where he had converted (though he referred to the synagogue he had attended with his girlfriend as both "Temple David" and "Temple Israel"). Awad insisted, however, that he could not seek corroborating evidence from the synagogue because he did not know its phone number.

The government provided evidence of earlier statements and applications that contradicted Awad's testimony. First, although Awad told the immigration judge that he had not traveled to Jordan since coming to the United States, in his 2007 application for naturalization he had listed a trip to Jordan in 2003 and again in 2004. When the immigration judge asked him about this discrepancy, Awad answered that he thought his trips to Jordan were "irrelevant" because "nothing happened" while he was there. The government also introduced Awad's written statement from a 2012 immigration interview asserting that his parents currently were "married" and had never been

separated. Yet during the hearing Awad asserted that his parents had divorced in 1998 when his father left for Jordan. (At his removal hearing, Awad had claimed derivative citizenship on the basis of his father's naturalization before his 18th birthday, and the legitimacy of that claim—which the immigration judge rejected—depended on the marital status of Awad's parents before he turned 18 years old in 1999. *See* 8 U.S.C. § 1432(a)(3) (1999) (repealed 2000).) Awad explained the inconsistency by saying that he must have misunderstood the questions at his earlier interview.

After concluding that Awad was not eligible for asylum because of his conviction for an aggravated felony, *see* 8 U.S.C. § 1158(b)(2)(A)(ii), the immigration judge denied his application for withholding of removal. The immigration judge found that Awad was not credible because he testified inconsistently about his parents' marital status and failed to disclose the trips to Jordan in his application. The immigration judge observed that Awad "did not appear sincere in his religious faith," did not give concrete details about his conversion, and failed to supply any corroboration from the synagogue or his younger brother (with whom he said he kept in contact). The Board of Immigration Appeals upheld this adverse credibility finding and denied the applications for relief.

In his petition for review, Awad contends that his convictions cannot form the basis for denying him asylum because, he asserts, he pleaded guilty in 2011 and 2012 without a warning from his lawyer of the immigration consequences, depriving him of his right to effective assistance. *See Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). Awad says that he is seeking collateral relief and has attached docket sheets showing that he filed postconviction motions on the day of the immigration judge's decision. But this is a constitutional argument against his *criminal* convictions, and aliens cannot collaterally attack domestic convictions in an immigration proceeding. *See Moral-Salazar v. Holder*, 708 F.3d 957, 962–63 (7th Cir. 2013); *Ghani v. Holder*, 557 F.3d 836, 839 (7th Cir. 2009); *cf. Doe v. Gonzales*, 484 F.3d 445, 451 (7th Cir. 2007) (remanding for Board to consider collateral attack where foreign court was "kangaroo court to make kangaroos blush").

With respect to his claim for withholding of removal, we understand Awad to assert generally that the adverse credibility finding is not supported by substantial evidence and that the immigration judge should have asked him for more details if she doubted the sincerity of his faith. The government responds that this evidentiary claim falls outside our jurisdiction because we can review only legal or constitutional claims when the petitioner is removable as a criminal alien. *See* 8 U.S.C. § 1252(a)(2)(C)–(D).

We agree with the government that we lack jurisdiction to review Awad's challenge to the adverse credibility finding. Because he is removable for an aggravated felony (and he does not dispute that the retail theft for which he was sentenced to two years *is* an aggravated felony), we cannot review the agency's decision for substantial evidence. *See Rosiles-Camarena v. Holder*, 735 F.3d 534, 536 (7th Cir. 2013); *LaGuerre v. Mukasey*, 526 F.3d 1037, 1040 (7th Cir. 2008). We do have jurisdiction to review a legal argument that an immigration judge wholly ignored a petitioner's evidence. *See Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008). But here the record shows that the immigration judge considered the evidence and simply found Awad not credible, thus dooming his assertion that he would face harm based on his conversion. *See Abraham v. Holder*, 647 F.3d 626, 634 (7th Cir. 2011); *Lin v. Holder*, 630 F.3d 536, 542 (7th Cir. 2010); *Soumare v. Mukasey*, 525 F.3d 547, 553 (7th Cir. 2008).

We have examined Awad's other contentions, and they are neither constitutional nor legal. Accordingly, the petition for review is **DISMISSED**.