RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ZULFIA FAYZULLINA,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,

*Respondent.*

No. 13-4335

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A096 781 246.

Decided and Filed:  January 6, 2015[*]

Before:  GUY, ROGERS, and DONALD, Circuit Judges.

———————

**COUNSEL**

**ON BRIEF:**  Philip A. Eichorn, PHILIP EICHORN CO., LPA, Cleveland, Ohio, for Petitioner. Jesse Lloyd Busen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

**OPINION**

———————

ROGERS, Circuit Judge.  Zulfia Fayzullina, a native and citizen of Russia, challenges the order of her removal for having provided a materially false writing regarding her marital and residential status and for having been convicted of providing a materially false document to the government, a crime of moral turpitude.  Sufficient evidence supports the conclusion that she

———————

[*]This opinion was originally issued as an "unpublished decision" filed on January 6, 2015.  The court has now designated the opinion as one recommended for full-text publication.

made the false writing, that it was material, and that she committed a crime of moral turpitude when she submitted it to the government. For that reason, and because neither of the provisions for waiver of removal upon which Fayzullina relies applies in this case, her petition for review lacks any tenable basis.

Fayzullina and Matthew Grey entered into a sham marriage for the purpose of evading U.S. immigration laws. Fayzullina entered the United States from her native Russia on May 31, 2005, on a non-immigrant visa. On March 17, 2006, she married Grey and, shortly thereafter, petitioned to change her status to that of a lawful permanent resident. The government granted her petition on August 26, 2008. In January, 2009, Fayzullina sought reentry after travelling abroad, and was admitted.

Then, on August 5, 2009, a federal grand jury indicted Fayzullina and Grey. The indictment included three counts against Fayzullina. Count 1 charged that Grey and Fayzullina had married "for the purpose of evading a provision of the immigration laws of the United States." Count 2 charged that Fayzullina "did knowingly and willfully make and use a material false writing and document by presenting to the CIS [Citizenship and Immigration Services] an I-485, Application to Register Permanent Residence or Adjust Status, knowing the same to be false; that is false and misleading information regarding his [sic] marital status including his [sic] residence information." Count 4 alleged that Fayzullina and Grey made material false statements so that a third party could receive compensation and so that another third party could evade the immigrations laws.

Fayzullina pled guilty to Count 2 of the indictment in exchange for dismissal of Counts 1 and 4. The federal district court entered judgment against Fayzullina on March 24, 2010, finding her guilty of violating 18 U.S.C. § 1001(a)(3). Section 1001(a)(3) provides:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry . . . shall be fined under this title [or] imprisoned not more than 5 years . . . .

18 U.S.C. § 1001(a)(3). The court sentenced Fayzullina to two years' probation.

On September 30, 2010, the Department of Homeland Security (DHS) initiated removal proceedings against Fayzullina by serving her with a Notice to Appear (NTA). The original NTA included only four factual allegations, but DHS subsequently amended it by striking the third and fourth allegations and replacing them with four new allegations, for a total of six allegations. Fayzullina admitted the first four allegations in the amended NTA, but denied Allegations 5 and 6. Allegation 5 charged that Fayzullina:

> procured [her] admission, visa, adjustment, or other documentation or benefit by fraud or by willfully misrepresenting a material fact, to wit: [she] knowingly provided false representations regarding [her] marriage to Matthew Grey in [her] I-485 adjustment of status application and [she] knowingly provided false statements regarding [her] marriage to Matthew Grey at [her] adjustment of status interview in order to procure [her] admission, visa, adjustment, or other documentation or benefit by fraud or by willfully misrepresenting a material fact.

A.R. 168. Allegation 6 charged that:

> On or about March 22, 2010, after pleading guilty, [Fayzullina was] convicted in the U.S. District Court for the Southern District of Ohio . . . of Making a False Statement and Representation in violation of 18 U.S.C. § 1001(a)(2) [sic] and [she was] sentenced to probation for a period of two years for this offense (although the statutory maximum sentence of five years imprisonment could have been imposed).

*Id.*

While Fayzullina acknowledged having pled guilty to lying about her marriage in her I-485, she denied Allegation 5 because, she said, the government had not adequately established that her misrepresentation was material. Fayzullina also denied Allegation 6, on the ground that she had never been convicted of violating 18 U.S.C. § 1001(a)(2), and that in any event the crime she was convicted of, framed in the disjunctive, was, in part, not one of moral turpitude.

The IJ adopted Allegations 5 and 6. With respect to Allegation 5, he concluded that Fayzullina's guilty plea was sufficient to sustain the factual allegation with respect to her I-485 statements, and also that a Statement of Facts submitted to the district court and prepared and signed by Fayzullina admitted that she made false statements at the adjustment of status interview. That admission, the IJ found, established that Fayzullina had knowingly lied to the CIS officer at her adjustment of status interview.

Regarding Allegation 6, the IJ acknowledged that the charging document listed the wrong statute of conviction—18 U.S.C. § 1001(a)(2), rather than § 1001(a)(3). Rather than dismiss the allegation, however, the IJ determined, *sua sponte*, to "amen[d] the alleged statute of conviction to 18 U.S.C. § 1001(a)(3)," and then adopted the amended allegation.

Next, the IJ addressed the government's two stated bases for removability: 8 U.S.C. §§ 1227(a)(1)(A) and 1227(a)(2)(A)(i). Section 1227(a)(1)(A) provides that, "Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." 8 U.S.C. § 1227(a)(1)(A). The IJ determined that Fayzullina was inadmissible when she became a lawful permanent resident because of 8 U.S.C. § 1182(a)(6)(C)(i), which makes inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i). The IJ concluded that Fayzullina's conviction under 18 U.S.C. § 1001(a)(3)—for "knowingly and willfully . . . mak[ing] or us[ing] [a] false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry," 18 U.S.C. § 1001(a)(3)—met 8 U.S.C. § 1182(a)(6)(C)(i)'s requirements of willfulness and materiality, making Fayzullina removable under 8 U.S.C. § 1227(a)(1)(A).

The IJ also concluded that Fayzullina was removable under 8 U.S.C. § 1227(a)(2)(A)(i). That statute makes removable "Any alien who (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i). Relying on Sixth Circuit and BIA precedents, the IJ found that Fayzullina's violation of 18 U.S.C. § 1001(a)(3) necessarily entailed both knowledge and materiality, such that it constituted a crime of moral turpitude. Because Fayzullina's conviction under 18 U.S.C. § 1001(a)(3) occurred within five years of her arrival in the United States and was punishable by more than a year in prison, the IJ determined that she was removable under 8 U.S.C. § 1227(a)(2)(A)(i), as well.

Fayzullina moved the IJ to reconsider his finding that she was removable under 8 U.S.C. § 1227(a)(2)(A)(i). The IJ denied Fayzullina's motion on June 7, 2012, finding that any violation of 18 U.S.C. § 1001(a)(3) constitutes a crime involving moral turpitude. Because violations of § 1001(a)(3) are categorically crimes of moral turpitude, he concluded, there was no need to consider the particulars of Fayzullina's record of conviction in determining whether she was removable under 8 U.S.C. § 1227(a)(2)(A)(i).

After the IJ denied her motion for reconsideration on removal, Fayzullina applied for waiver of removal under 8 U.S.C. §§ 1227(a)(1)(H) and 1182(h). Section 1227(a)(1)(H) permits waiver of removal when an alien:

> is the spouse, parent, son, or daughter of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and . . . was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

8 U.S.C. § 1227(a)(1)(H). Section 1182(h) permits waiver of removal when the alien:

> is the spouse, parent, son, or daughter of a citizen of the United States . . . [and] it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien. . . . No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

*Id.* at § 1182(h).

The IJ determined that Fayzullina did not meet either section's criteria for relief. First, he found Fayzullina was not eligible for waiver under § 1227(a)(1)(H), which allows waiver only where the grounds of removability are the "direct result of [] fraud or misrepresentation." But the direct cause of Fayzullina's removability, the IJ decided, was not her fraud or misrepresentation; it was her *conviction* on the basis of fraud or misrepresentation. As he explained:

> The Respondent was convicted of a crime involving moral turpitude. The Respondent's inadmissibility under INA § 212(a)(2)(A)(i)(I) is the *direct* result of that conviction. The underlying fraud is an *indirect* cause, and is thus not covered by INA § 237(a)(1)(H).

A.R. 135. The IJ concluded that, because Fayzullina's removability was not the direct result of fraud or misrepresentation, she was not eligible for waiver of removal under § 1227(a)(1)(H).

The IJ next found that Fayzullina did not meet the requirements for eligibility under 8 U.S.C. § 1182(h), since she had not lawfully resided continuously in the United States for seven years before removal proceedings commenced. Section 1182(h) expressly applies only to aliens who have resided in the United States for seven years before the government initiates proceedings to remove them from the country. 8 U.S.C. § 1182(h). Fayzullina entered the country on May 31, 2005, and was served with the NTA on September 30, 2010, and therefore she had been in the country for just over five years when the government initiated removal proceedings.

Fayzullina appealed the IJ's decision, but the BIA dismissed the appeal on November 5, 2013. The Board concluded that the IJ properly sustained Allegation 5 in the charging documents because DHS provided sufficient evidence to establish that Fayzullina knowingly provided materially false oral and written statements regarding her prior marriage to obtain adjustment of status. The BIA also concluded that the IJ had not violated Fayzullina's due process rights in changing Allegation 6 to properly reflect Fayzullina's statute of criminal conviction, because Fayzullina had been aware of the nature of her criminal conviction and, therefore, was "not unduly prejudiced by the DHS's error in the Form I-261." The BIA then upheld the IJ's finding that Fayzullina was removable under 8 U.S.C. § 1227(a)(2)(A)(i), citing Sixth Circuit and BIA precedent for the proposition that an offense under 18 U.S.C. § 1001 is categorically a crime involving moral turpitude.

The BIA also upheld each of the IJ's findings pretermitting waiver. First, the BIA held that 8 U.S.C. § 1227(a)(1)(H) could not operate to waive a charge of removability under 8 U.S.C. § 1227(a)(2)(A)(i) because § 1227(a)(1)(H), by its terms, applies exclusively to "[t]he provisions of this paragraph," *i.e.*, paragraph (a)(1) of § 1227. The BIA determined that 8 U.S.C. § 1227(a)(1)(H) thus could not effect a waiver of removability based on 8 U.S.C.

§ 1227(a)(2)(A)(i). The BIA also concluded that Fayzullina was ineligible for a waiver under 8 U.S.C. § 1182(h) because she could not meet that waiver provision's requirement of seven years' physical presence in the United States. The Board accordingly dismissed Fayzullina's appeal in its entirety. Fayzullina now petitions for review of the BIA decision.

None of Fayzullina's arguments warrants granting her petition for review.

First, notwithstanding Fayzullina's argument, a violation of 18 U.S.C. § 1001(a)(3) is categorically a "crime involving moral turpitude" for purposes of removal under 8 U.S.C. § 1227(a)(2)(A)(i). This conclusion is supported by precedents of our court and of the BIA.

The BIA has "long held that crimes involving fraud or making false statements have been found to involve moral turpitude." *Matter of Pinzon*, 26 I. & N. Dec. 189, 193 (BIA 2013); *see also Matter of Correa-Garces*, 20 I. & N. Dec. 451, 454 (BIA 1992). Its construction of ambiguous statutory provisions—like the term "crime involving moral turpitude"—is entitled to *Chevron* deference. *Ruiz-Lopez v. Holder*, 682 F.3d 513, 516 (6th Cir. 2013). Consequently, this court "must uphold the BIA's construction [of 8 U.S.C. § 1227(a)(2)(A)(i)] unless it is arbitrary, capricious, or manifestly contrary to the statute." *Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843–44 (1984)) (internal quotation marks omitted). Our circuit has held—along with a number of other circuits—that the BIA's interpretation of "crime involving moral turpitude" is reasonable. *Novatchinski v. Holder*, 516 F. App'x 526, 530–31 (6th Cir. 2013) (holding the BIA's interpretation reasonable and listing cases reaching the same conclusion); *Ghani v. Holder*, 557 F.3d 836, 841 n.3 (7th Cir. 2009) (listing additional cases).

This court's precedents, too, stand for the proposition that crimes of deliberate dishonesty involving material facts categorically involve moral turpitude. For example, in *Kellermann v. Holder*, we held that pleading guilty to having "unlawfully, willfully, and knowingly conspire[d] . . . to knowingly and willfully make false, fictitious, *and* fraudulent statements or representations concerning a material fact within the jurisdiction of a department or an agency of the United States" supported removability under 8 U.S.C. § 1227(a)(2)(A)(i). 592 F.3d at 703–05. We have reasoned similarly in cases involving lying on a student loan application, *Kabongo v. INS*, 837 F.2d 753, 758 (6th Cir. 1988), and knowingly possessing illicit identification

documents with intent to use or transfer them, *Yeremin v. Holder*, 738 F.3d 708, 715–16 (6th Cir. 2013). Most recently, in *Imran v. Holder*, 531 F. App'x 749 (6th Cir. 2013), we held that, for purposes of 18 U.S.C. § 1227, it made no difference whether the petitioner had pled guilty to making a fictitious statement or a false statement, since either admission constituted a crime of moral turpitude. "Making a fictitious statement to a government agency knowing that it is fictitious involves no less moral turpitude than making a false statement to a government agency knowing that it is false." *Id.* at 750.

These cases make clear that crimes of making deliberately dishonest statements involving material facts are inherently crimes involving moral turpitude. Those elements—materiality and knowledge—are manifestly present in Fayzullina's case. Indeed, she pled guilty to "mak[ing] or us[ing] any false writing or document *knowing* the same to contain any *materially* false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1001(a)(3) (emphasis added). This admission is more than sufficient to establish her violation of § 1001(a)(3) as a crime involving moral turpitude.

It makes no difference that the aforementioned cases construed statutory language other than the current version of 18 U.S.C. § 1001(a)(3). The statutes they addressed use language that is not materially distinguishable from the language of § 1001(a)(3). *Imran*, for example, dealt with 18 U.S.C. § 1001(a)(2), which criminalizes "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation." *See Imran*, 531 F. App'x at 750. In comparison, 18 U.S.C. § 1001(a)(3) criminalizes "knowingly and willfully . . . mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1001(a)(3). The differences do not affect the degree of moral turpitude. First, paragraph (a)(2) applies to "statement[s] or representation[s]," whereas (a)(3) applies to "writing[s] or document[s]." But there is no reason why a written falsehood should involve moral turpitude any more or less than a spoken one. Second, paragraph (a)(2) applies to *any* false, fictitious, or fraudulent statements or representations, whereas paragraph (a)(3) is expressly limited to writings or documents made *with the knowledge* that the writings or documents "contain any materially false, fictitious, or fraudulent statement[s] or entr[ies]." If anything, paragraph (a)(3)'s requirement that a writing

or document be made with knowledge of the falsehood makes a guilty plea under paragraph (a)(3) *more* likely to involve moral turpitude than a plea under paragraph (a)(2), since it limits convictions under paragraph (a)(3) to defendants who acted with scienter. *See Ruiz-Lopez v. Holder*, 682 F.3d 513, 519 (6th Cir. 2012) (citing *Matter of Silva-Trevino*, 24 I. & N. Dec. 687, 706 & n.5 (BIA 2008)).

Fayzullina also argues that the IJ and the BIA failed to apply the correct framework in analyzing her claims, but her argument is without merit in the circumstances of this case. We have recently explained that, when a court considers whether conviction under a criminal statute with alternative elements constitutes a conviction for a crime of moral turpitude, the court need not go beyond the terms of the statutes (i.e., use a "modified categorical approach") where each of the criminal alternatives is independently a crime of moral turpitude:

> In determining whether a conviction under a federal statute fits the BIA's definition of a crime involving moral turpitude, we apply what are known as the categorical and modified-categorical approaches. First, the categorical approach is applied, in which we consider whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude. We thus look to the elements of the offense, rather than the underlying facts of the specific case. If the full range of conduct encompassed by the statute constitutes a crime of moral turpitude, then the conviction is for an offense qualifying as a crime involving moral turpitude.

*Yeremin v. Holder*, 738 F.3d 708, 715 (6th Cir. 2013) (citations and internal quotation marks omitted). What the BIA did in this case is fully consistent with this first step. The BIA concluded accurately that "both the Board and the [Sixth Circuit] . . . have held that an offense under 18 U.S.C. § 1001 is a categorical crime involving moral turpitude." A.R. 11.

A person who pleads guilty under 18 U.S.C. § 1001(a)(3) necessarily admits having knowingly used a document that is materially false, fictitious, or fraudulent. 18 U.S.C. § 1001(a)(3). Regardless of how the misinformation is characterized, the elements of materiality and scienter are inescapably present in any such plea, so that pleading guilty to violating § 18 U.S.C. § 1001(a)(3) is tantamount to admitting to a crime involving moral turpitude. Because a violation of 18 U.S.C. § 1001(a)(3) is categorically a crime involving moral turpitude, there was no reason for the BIA or the IJ to apply a modified-categorical analysis in Fayzullina's

case. In short, the BIA did not err in concluding that Fayzullina's violation of 18 U.S.C. § 1001(a)(3) was a crime involving moral turpitude.

The IJ, moreover, did not violate Fayzullina's due process rights by *sua sponte* amending Allegation 6 of the NTA to reflect that she had pled guilty to violating 18 U.S.C. § 1001(a)(3), rather than 18 U.S.C. § 1001(a)(2). The amendment did not prejudice her, and an alleged due process violation is not cognizable in the immigration context absent a showing of prejudice. "To prevail on a due process challenge, an alien must demonstrate not only error, but also substantial prejudice, or sho[w] the alleged violation affected the outcome of the proceeding." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009). Conduct that does not prevent an alien from "reasonably presenting his case" is not a due process violation. *Id.* The emphasis on actual prejudice, rather than technical exactitude, comports with the Supreme Court's longstanding rejection of "the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept[ance of] the principle that the purpose of pleading is to facilitate a proper decision on the merits." *United States v. Hougham*, 364 U.S. 310, 317 (1960).

Fayzullina suggests two ways the IJ's *sua sponte* amendment may have prejudiced her, but neither is persuasive. First, she says that she lacked "notice of the correct subsection" underlying the charge of removability. That claim is undermined by the fact that, in her pleadings before the IJ, Fayzullina repeatedly addressed argument to the correct paragraph of the statute, notwithstanding the typographical error. In her motion for reconsideration, moreover, Fayzullina raised several additional legal arguments expressly addressing the correct statute. Fayzullina's other argument regarding prejudice is that the IJ "did not analyze the text of the correct statute." That argument is manifestly wrong. Indeed, it was the IJ who amended Allegation 6 to state the correct statute of conviction. Nothing else in the IJ's opinions or the BIA's opinion suggests that either tribunal was confused about the paragraph of 18 U.S.C. § 1001(a) to which Fayzullina had pled guilty. Her remaining allegations of prejudice are either unsubstantiated or conclusory.

Finally, the BIA properly concluded that Fayzullina is ineligible for waiver under either of the two provisions upon which she relies. First, Fayzullina argues that she is eligible for waiver of removal under 8 U.S.C. § 1227(a)(1)(H), which allows for waiver of "the [removal]

provisions *of this paragraph*" under certain conditions.  8 U.S.C. § 1227(a)(1)(H) (emphasis added).  The problem for Fayzullina is that the IJ and the BIA found her removable not just under paragraph (1) of § 1227(a), but also under paragraph (2). The waiver provision in § 1227(a)(1)(H) explicitly applies only to findings of removability based on paragraph (1); it does not encompass or permit waiver of the provisions of any other paragraph.  *Id.*  That is why the two circuit courts to have addressed the question have held that § 1227(a)(1)(H)'s waiver provision does not apply to findings of removability based on other paragraphs in § 1227(a). *Taggar v. Holder*, 736 F.3d 886, 890 (9th Cir. 2013); *Gourche v. Holder*, 663 F.3d 882, 886–87 (7th Cir. 2011).

Fayzullina disputes this reading of the statute, contending that it fails to "address the language that 8 U.S.C. § 1227(a)(1)(H) waives other grounds of inadmissibility that are a 'direct result' of the fraud [that is the basis for removal]."  She argues that, because her conviction under 18 U.S.C. § 1001(a)(3) was a "direct result" of deception or fraud, her resultant inadmissibility under 8 U.S.C. § 1227(a)(2)(A)(i) is waivable under 8 U.S.C. § 1227(a)(1)(H).  But even if Fayzullina were inadmissible as a "direct result" of deceptive or fraudulent conduct, she would still not be eligible for a waiver under 8 U.S.C. § 1227(a)(1)(H) because waivers under that section only apply to "the provisions *of this paragraph*," *i.e.*, 8 U.S.C. § 1227(a)(1) (emphasis added).  Because one basis for Fayzullina's removability is 8 U.S.C. § 1227(a)(2), she is not eligible for waiver of removal under 8 U.S.C. § 1227(a)(1)(H).  *See Gourche*, 663 F.3d at 886–87.

Second, Fayzullina argues that she is eligible for a waiver under 8 U.S.C. § 1182(h).  To be eligible for a waiver under that subsection, however, the Board held that Fayzullina must show that she "resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove [her] from the United States," under  8 U.S.C. § 1182(h).[1]  The record shows that, even disregarding Fayzullina's brief departure from the United States in 2009, she had been in the country at most for just over five

---

[1]Fayzullina does not argue that the seven-year requirement is inapplicable on the ground that she is not "an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence" for purposes of § 1182(h).

years when DHS initiated removal proceedings against her. That duration is well short of the seven-year requirement of 8 U.S.C. § 1182(h).

Relying on *Matter of Tanori*, 15 I. & N. Dec. 566 (BIA 1976), and *Matter of Sanchez*, 17 I. & N. Dec. 218 (BIA 1980), Fayzullina argues in a somewhat obscure fashion that she may nonetheless seek a *nunc pro tunc* waiver under § 1182(h). *Tanori* and *Sanchez* are facially distinguishable because both Tanori and Sanchez had indisputably been residents of the United States for over seven years when removal proceedings were initiated against them. *See Matter of Tanori*, 15 I. & N. Dec. at 567; *Matter of Sanchez*, 17 I. & N. Dec. at 223–24. In any event, the *nunc pro tunc* waiver concept that was acknowledged for different purposes in those cases has since been definitively repudiated by the BIA. *See Rivas v. U.S. Att'y. Gen.*, 765 F.3d 1324, 1329 (11th Cir. 2014) (discussing *Matter of Rivas*, 26 I. & N. Dec. 130, 131–34 (BIA 2013)).

The petition for review is denied.