NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0656n.06

No. 14-3663

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>VERONICA SANTANA, aka Veronica Nunez Lino</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON PETITION FOR REVIEW</td></tr>
<tr><td></td><td>)</td><td>FROM THE UNITED STATES</td></tr>
<tr><td>LORETTA E. LYNCH, Attorney General,</td><td>)</td><td>BOARD OF IMMIGRATION</td></tr>
<tr><td></td><td>)</td><td>APPEALS</td></tr>
<tr><td>Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Sep 28, 2015
DEBORAH S. HUNT, Clerk

BEFORE:     BATCHELDER, ROGERS, and COOK, Circuit Judges.

ROGERS, Circuit Judge.  Veronica Santana is a Mexican citizen who seeks withholding of removal.  Santana claims that, if she returns to Mexico with her children, she will be targeted by gangs because of her membership in a "particular social group," namely "Mexicans who have been in the United States for [an] extended period of time and are returning to Mexico with Americanized children."  The Board of Immigration Appeals denied her application for withholding of removal, in part because it found that she "has not demonstrated the required nexus between the harm she fears and her status" in the particular social group alleged.  A.R. at 4–5.  Because this finding is supported by substantial evidence and her other arguments are without merit, the Board did not abuse its discretion in dismissing Santana's appeal.

On November 18, 2010, the Department of Homeland Security (DHS) initiated removal proceedings against Santana.  A.R. at 86.  DHS charged her with removability under INA

§ 212(a)(6)(A)(i) as an alien "present in the United States without having been admitted or paroled." A.R. at 326. Santana conceded removability at her first hearing on June 28, 2011, A.R. at 86, admitting that she had entered the United States at an unknown point of entry without a valid entry document in 2003. She sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT) at her second hearing on August 30, 2011.[1] Though Santana's initial application indicated only that she feared returning to Mexico because of the country's rampant criminal violence,[2] A.R. at 352, Santana later altered her claim to seek withholding of removal based on the statute that prohibits the Attorney General from removing an alien to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, *membership in a particular social group*, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (emphasis added). Santana claimed that, should she be removed to Mexico, she would be persecuted because she was a member of a particular social group, namely "Mexicans who have been in the United States for [an] extended period of time and are returning to Mexico with Americanized children." A.R. at 159; *see* 8 U.S.C. § 1231(b)(3)(A). After Santana's third hearing on December 10, 2012, the Immigration Judge (IJ) denied her application for relief.

---

[1] On appeal, Santana waived any challenges to the Board's denial of her asylum and CAT claims. Appellant's Br. at 21.

[2] On her asylum application, Santana stated:

> Insecurity in Mexico is terrible, day by day organized crime cartels kill and torture innocent people without any compassion[.] [T]he idea terrifies me to think back especially now that the criminal situation in Mexico is uncontrollable.
>
> I just received the newspapers from my town and there [is] nothing but criminal reports.
>
> I am very afraid to return to Mexico, due to the wave of violence that is living in there.

A.R. at 352. Santana's generalized fears about the criminal violence in Mexico are consistent with those expressed by Santana at her first hearing, where Santana indicated that she did not want to return to Mexico "because it's very dangerous." A.R. at 145. Though Santana admitted that she did not necessarily think that someone in particular would harm her should she return, she had heard that "there [are] a lot of delinquents that hurt people [in Mexico], and that's why [she was] scared." A.R. at 146.

At the December 10, 2012 hearing, Santana was the sole witness in support of her application. Santana testified that she feared returning to Mexico "because the crime is very advanced" and her "children are used to . . . life" in the United States. A.R. at 179, 193. She feared that something—such as a kidnapping—would happen to her children because, "when people see you coming from [the United States] to [Mexico,] they believe you're carrying a lot of money." A.R. at 180, 193. According to Santana, her family members had told her that persons returning to Mexico from the United States were being targeted. A.R. at 182. By way of example, Santana explained—though failed to corroborate—the story of a family who—after returning to Mexico from the United States—was allegedly "asked . . . for money." A.R. at 182−83, 193−94. She also mentioned that the police in Mexico had allegedly beaten up three of her nephews for "no reason." A.R. at 199, 334. Santana, however, admitted that her nephews had never spent any time in the United States, A.R. at 181, and she did not corroborate this incident. Santana also testified that she did not have any proof that anyone in Mexico had an interest in harming either her or her children should she return, and stated that she had never had any problems before. A.R. at 180, 194. In addition to Santana's testimony, Santana submitted various documents describing conditions in Mexico, including two State Department reports. A.R. at 232−316.

At the end of the hearing, the IJ issued an oral decision denying Santana relief. Although the IJ acknowledged that Santana "was poorly served" by the *notario* who assisted her in drafting her application, A.R. at 89, the IJ nevertheless determined that Santana was not credible because her "testimony was not very detailed" and "was anything but persuasive." A.R. at 93. In so finding, the IJ also pointed to Santana's failure to provide corroborating evidence, stating:

> In the case at bar the respondent claimed to have pictures of one of the nephews belonging to her husband. She claimed to have some sort of proof that one of the nephews had filed a complaint with the police. None of these matters were proffered to the Court. They could have been proffered to the Court, and the fact that they were not not only demonstrates that she should have provided them but that also is a factor to be considered in deciding that she is not credible.

A.R. at 94. Next, the IJ denied Santana's asylum application as untimely. A.R. at 95. Finally, the IJ rejected her requests for relief on the merits, finding that: (1) Santana had not shown that "Mexicans who [have] been in the United States for an extended period of time and are returning to Mexico with Americanized children" constituted a social group eligible for either asylum or withholding of removal, A.R. at 96−97; (2) even assuming arguendo that it was a viable social group, she had not "presented any evidence indicating that she would be at risk of being harmed on the basis of the membership in th[e] particular social group," A.R. at 96−97; and (3) she "ha[d] not demonstrated a well-founded fear objectively or subjectively of future persecution," A.R. at 105−06.

The BIA affirmed. A.R. at 3−6. The Board first determined that a remand was not necessary to afford Santana an opportunity to provide corroborating evidence relating to her nephews' beating because the beating was "not relevant to [Santana's] asylum claim"; evidence of the nephews' beating, which had allegedly occurred for "no reason," had no bearing on whether Santana, a returning immigrant with Americanized children, would be persecuted. A.R. at 3. Second, the Board agreed with the IJ that Santana had not shown membership in a "particular social group within the meaning of the Act" because the proposed group lacked particularity and social distinction. A.R. at 5. Third, the Board explained in the alternative that:

> Even if the respondent's proposed group were cognizable under the Act, she has not demonstrated the required nexus between the harm she fears and her status as a Mexican who has been in the United States for an extended period of time and is

> returning to Mexico with Americanized [children]. [Santana] has not provided any evidence to establish that she would be personally targeted in Mexico based on her proposed group or for any other reason. She has also not demonstrated a pattern or practice of persecution of a group of similarly situated people on account of a protected ground. Although the respondent testified that some of her family members have been victims of violence in Mexico, the record does not establish that these attacks were anything more than random criminal acts. Therefore, . . . we concur with the Immigration Judge that [Santana] did not establish eligibility for withholding of removal.

A.R. at 4−5 (internal citations omitted).

Santana petitions for review. She requests remand in light of two recent decisions of the BIA concerning the definition of "a particular social group." Santana alleges that, because *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (B.I.A. 2014), and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (B.I.A. 2014), established new law in regard to how to show membership in a "particular social group," she should be afforded the "opportunity to more properly formulate a 'particular social group' that meets the new guidelines." Appellant's Br. at 21, 31. Santana also contends that the BIA erred in failing to address her argument that the Real ID Act requires immigration judges to provide immigrants notice and opportunity to produce corroborating evidence, and that the BIA erred in allowing a one-member, rather than a three-member, panel to review her case. These arguments lack merit.

Because Santana failed to show that she would likely be persecuted if she returned to Mexico, it is unnecessary to decide whether she is a member of a particular social group or to remand the case for that purpose. Substantial evidence supports the BIA's finding that Santana was not likely to be persecuted if she returned to Mexico, and in any event not likely to be harmed because of "her status as a Mexican who has been in the United States for an extended period of time and is returning to Mexico with Americanized [children]." A.R. at 4. Santana

admitted that she had never been harmed in Mexico. A.R. at 96, 180. Further, Santana's testimony in regard to her fear of returning to Mexico focused not on how members of her proposed group are persecuted, but rather generally on how "the criminal situation in Mexico is uncontrollable" and the "crime is very advanced." A.R. at 179, 334. For instance, she explained that her nephews had been beaten by the police, yet admitted that they had never been to the United States and the incident had occurred for "no reason," not because they were members of her proposed group. A.R. at 181, 199, 334. Her discussion of the family who—after returning to Mexico from the United States—was asked for money, lacked any detail and failed to show that the request for money was made because of the family members' membership in Santana's proposed social group. Finally, the documents included with Santana's petition describing conditions in Mexico painted a frightening picture of the violence and crime prevalent in the country, but said nothing about the treatment of Mexicans who return to Mexico from the United States with Americanized children. Considered cumulatively, this evidence supports the BIA's finding.

Any remand for reconsideration of whether Mexicans who have been in the United States for an extended period of time and are returning to Mexico with Americanized children as alleged by Santana are a "particular social group" is not necessary. Santana requests that her case be remanded to the IJ for reconsideration in light of recent BIA decisions concerning the definition of "particular social group," even though the BIA cited these very precedents. *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (B.I.A. 2014); *Matter of W-G-R-*, 26 I. & N. Dec. 208 (B.I.A. 2014). Santana argues that these decisions fundamentally changed the standard applicable to her withholding application and that due process compelled the BIA to remand to the IJ with the opportunity for Santana to present new arguments and evidence. *See* Petitioner's

Br. at 31−32. However, an agency's clarification or change in an applicable standard for relief does not necessarily require a new hearing at a lower level of the agency process before the agency can rule. In any event, any error concerning whether Mexicans who have been in the United States for an extended period of time and are returning to Mexico with Americanized children are a particular social group did not affect the outcome of the proceeding because Santana did not sufficiently show that she is likely to be persecuted on that basis in Mexico, which is a necessary element of her claim for withholding of removal. "To prevail on a due process challenge, an alien must demonstrate not only error, but also substantial prejudice, or show the alleged violation affected the outcome of the proceeding." *Fayzullina v. Holder*, 777 F.3d 807, 815 (6th Cir. 2015). Both the IJ and BIA determined that Santana failed to show likelihood of persecution based on the asserted category and a change in law concerning the definition of a particular social group provides no reason to revisit this determination.

Santana also argues extensively that the Board erred in failing to address her argument that, under the Real ID Act, the IJ was required to give her notice and an opportunity to provide the corroborating evidence deemed missing. Petitioner's Br. at 36−48. Santana focuses, in particular, on the IJ's failure to afford her an opportunity to provide proof of her nephews' beating. However, we do not need to address this argument because, as the Board underscored, the missing corroborating evidence is not relevant to Santana's claim and thus would not have changed the IJ's determination regarding her eligibility for relief.

Finally, whether Santana may challenge the BIA's decision to refer a case to a single-member or three-member panel remains an open question before this court. *See, e.g.*, *Denko v. I.N.S.*, 351 F.3d 717, 732 (6th Cir. 2003). Assuming without deciding that judicial review of the BIA's case-management system is appropriate, acceptance of Santana's argument would in any

event not require reversal. The judge's credibility determination—which Santana claims was "clearly erroneous," thus entitling her to a three-member panel under 8 C.F.R. § 1003.1(e)(6)(v)—did not affect the Board's finding that Santana had failed to present sufficient evidence that she was likely to be persecuted on account of her membership in the proposed social group. Santana has thus failed to demonstrate that her case should have been reviewed by a three-member panel of the BIA.

The petition for review is denied.