Ernesto NUNEZ–AVINA, Petitioner,

v.

Loretta E. LYNCH, Attorney General, Respondent.

No. 15–3058.

United States Court of Appeals, Sixth Circuit.

Oct. 13, 2015.

BEFORE: ROGERS and DONALD, Circuit Judges; ROSE, District Judge.

ROGERS, Circuit Judge.

Ernesto Nunez–Avina is a Mexican citizen who seeks withholding of removal. Nunez–Avina claims that, if he returns to Mexico, he will be targeted by gangs for robbery and extortion because he will be seen as a wealthy, Americanized Mexican. The Board of Immigration Appeals denied his application for withholding of removal, in part because it found that he did not establish that he was likely to be harmed upon his return to Mexico. Although Nunez–Avina makes several arguments in his petition for review, the BIA's finding was supported by substantial evidence and disposes of most of his arguments. Nunez–Avina's other arguments lack merit.

In 2011, the Department of Homeland Security (DHS) began removal proceedings against Nunez–Avina. DHS charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled. Nunez–Avina conceded removability but sought withholding of removal and protection under the Convention Against Torture. Nunez–Avina sought withholding of removal based on a statute that prohibits the Attorney General from removing an alien to a country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Nunez–Avina claimed that he would be persecuted in Mexico because he was a member of a particular social group, Americanized Mexicans, and because of imputed nationality, i.e., he would be mistakenly taken to be a United States citizen. *See* 8 U.S.C. § 1231(b)(3)(A). After a hearing, the Immigration Judge (IJ) denied his application for relief.

At the hearing, Nunez–Avina proffered several witnesses and affidavits in support of his claim. Leopoldo Francisco Orozco, a United States citizen who had emigrated from Mexico, testified that he had recently travelled to Mexico and felt unsafe. He also admitted that, despite being Americanized and well-known as a United States citizen, he had never been threatened or harmed during any of his several visits to Mexico. Juan Castillo Ramirez, also a United States citizen who had emigrated from Mexico, testified that drug cartels targeted travelers from the United States because they believed those travelers had money. He also testified that he had been too scared to return to Mexico, that armed robbers had attacked a bus his brother was riding in Mexico, and that his children had been approached by drug dealers at a

shopping mall during a recent visit to Mexico. He admitted that his children had not been threatened or harmed during their visit. Maria Serna, who was married to a Mexican citizen, testified that she had never been to Mexico but had heard that it was unsafe.

Nunez–Avina also offered his own testimony. He testified that his parents still lived in Mexico and had been able to avoid the gangs by not taking calls and not leaving their house in the evening. However, he contradicted himself by testifying that, eight months before the hearing, unknown people told his parents that that they would kill him unless his parents paid them money. When asked whether his parents paid that money, he replied, "Of course not." Neither he nor his parents were harmed. In his application, he claimed that two of his second cousins, Andres Murillo and Javier Ballesteros, were kidnapped and killed by drug cartels in 2011. However, at the hearing, Nunez–Avina testified that Javier escaped his kidnappers and returned to the United States.

Nunez–Avina submitted several affidavits from family members and acquaintances that suggested that he would be targeted by gangs for robbery or extortion because he had lived in the United States. These affidavits did not mention Andres or Javier or indicate that Nunez–Avina's parents had ever been threatened or harmed. He also submitted various documents describing conditions in Mexico, including two State Department reports.

At the end of the hearing, the IJ issued an oral decision denying Nunez–Avina relief. While the IJ acknowledged criminals in Mexico might target Nunez–Avina because of his wealth, the IJ noted that Nunez–Avina's wealth was not a basis for withholding of removal. Next, the IJ concluded that Nunez–Avina was not credible because of inconsistencies between his application, affidavits, and testimony. The IJ also observed that some affidavits appeared to have been forged because they had been notarized before they were typed. Apart from the adverse credibility determination, the IJ concluded that Nunez–Avina had not shown that Americanized Mexicans were a social group eligible for protection under the removal statute or that he would be persecuted because of his membership in that group. The IJ also found that Nunez–Avina had failed to show that it was "more likely than not that he would be harmed at all if he went back to Mexico, let alone" for reasons that would make him eligible for withholding of removal or protection under the Convention Against Torture.

The BIA affirmed. It determined that Nunez–Avina had not shown that he was likely to be persecuted or tortured if he returned to Mexico, had not shown that any persecution or torture would be because of his status as an Americanized Mexican or his imputed nationality, and had not shown that Americanized Mexicans were a social group eligible for protection. The Board did not rely on the IJ's adverse credibility determination.

Nunez–Avina petitions for review. He requests remand in light of three recent decisions of the BIA and Sixth Circuit concerning the definition of "a particular social group," and he argues that the BIA erred in not distinguishing between his particular social group and imputed nationality claims. He also requests that the court take judicial notice of State Department and DHS reports on Mexico and immigration. Because Nunez–Avina failed to show that he would likely be persecuted if he returned to Mexico, it is unnecessary to decide whether he is a member of a particular social group or had an imputed nationality, or to remand the case for those

purposes. He also argues that the BIA abused its discretion in failing to address a motion to remand, but that argument lacks merit because the BIA did address his motion.

■ Substantial evidence supports the BIA's findings that Nunez–Avina was not likely to be persecuted if he returned to Mexico, and that in any event he was "not likely to be persecuted or tortured as a result of being perceived as 'Americanized' claimed as an 'imputed nationality.'" Nunez–Avina admitted that he had never been harmed in Mexico. He testified that his parents had never been kidnapped or physically harmed, despite their having started a business, remodeled their home, and bought cars and clothes with money he had remitted. Although he claimed that, eight months earlier, a gang had demanded money from his parents, he also admitted that they never paid, and were never harmed. Two of Nunez–Avina's witnesses—both immigrants who had lived in the United States longer than he had—testified that they had repeatedly visited Mexico without being harmed. One of those witnesses, Juan Castillo Ramirez, allowed his minor children to visit Mexico, and they were not threatened or harmed during their visit. Considered cumulatively, this evidence supports the BIA's finding.

It is true that for the purposes of his petition for review, the court must assume that he was credible. An assumption about Nunez–Avina's credibility does nothing to disturb the BIA's finding that Nunez–Avina was not likely to be persecuted or tortured upon return to Mexico. The IJ's adverse credibility determination was an alternative reason for rejecting Nunez–Avina's application. Indeed, the BIA affirmed the IJ's finding, even as it expressly declined to reach the issue of credibility.

Any remand for reconsideration to determine whether Americanized Mexicans are a "particular social group" is unnecessary. Nunez–Avina requests that his case be remanded to the IJ for reconsideration in light of recent decisions of the BIA and the Sixth Circuit concerning the definition of "particular social group," although the BIA cited these very precedents. *See Umana–Ramos v. Holder,* 724 F.3d 667 (6th Cir.2013); *Matter of M–E–V–G–,* 26 I. & N. Dec. 227, 2014 WL 524499 (B.I.A. 2014); *Matter of W–G–R–,* 26 I. & N. Dec. 208, 2014 WL 524498 (B.I.A.2014). Nunez–Avina argues that these decisions fundamentally changed the standard applicable to his withholding application and that due process compelled the BIA to remand to the IJ with the opportunity for Nunez–Avina to present new arguments and evidence. However, any error concerning whether Americanized Mexicans are a particular social group did not affect the outcome of the proceeding because Nunez–Avina did not sufficiently show that he is likely to be persecuted on that basis in Mexico, which is a necessary element of his claim for withholding of removal. "To prevail on a due process challenge, an alien must demonstrate not only error, but also substantial prejudice, or show the alleged violation affected the outcome of the proceeding." *Fayzullina v. Holder,* 777 F.3d 807, 815 (6th Cir.2015). Both the IJ and BIA determined that Nunez–Avina failed to show likelihood of persecution based on the asserted categories, and a change in law concerning the definition of a particular social group provides no reason to revisit this determination.

■ Contrary to Nunez–Avina's argument, the BIA did address his motion for remand. Nunez–Avina argues that the BIA abused its discretion by failing to rule on his motion to remand for reconsideration in light of *Umana–Ramos.* In his

motion for remand before the BIA, Nunez–Avina failed to provide any additional evidence showing that he would be eligible for withholding of removal under *Umana–Ramos* if a new hearing was granted. In its opinion, the BIA acknowledged *Umana–Ramos* and determined that Nunez–Avina had not shown that Americanized Mexicans had "sufficient social distinction" or were "defined with sufficient particularity" to qualify as a particular social group for withholding of removal. The BIA concluded its opinion by stating that it found "no basis to remand" the case. Although the BIA must "consider the issues raised," it "need not write an exegesis on every contention." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir.2003).

We have considered the other arguments and "motions" in petitioner's brief and determine that they do not affect our decision.

The petition for review is denied.