**Francisco CRUZ–IBARRA, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

No. 14–4159.

United States Court of Appeals, Sixth Circuit.

Dec. 3, 2015.

Before: SILER, MOORE, and GIBBONS, Circuit Judges.

SILER, Circuit Judge.

Petitioner Francisco Cruz–Ibarra seeks review of the Board of Immigration Appeals' ("BIA") denial of his application for withholding of removal under the Immigration and Nationality Act ("INA") and protection under the Convention Against Torture ("CAT"). For the reasons stated below, we **DENY** Cruz–Ibarra's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Cruz–Ibarra, a Mexican national born in Ebano, San Luis Potosí, entered the United States without inspection or parole through the Texas border in 2001 and eventually settled in Nashville, Tennessee. In April 2011, he was arrested in Nashville for driving under the influence, and the Department of Homeland Security ("DHS") began removal proceedings against him. Appearing before an Immigration Judge ("IJ"), Cruz–Ibarra conceded his removability under the INA and requested withholding of removal and protection under the CAT. Cruz–Ibarra claimed he was eligible for withholding because he feared that, if removed, he would be persecuted on the basis of his membership in two particular social groups—"land owners" and "returning Mexican national[s] from the United States." Cruz–Ibarra testified that he left school in 1999, at the age of 12, to work for his grandfather, who owns a large cattle ranch in Ebano. Cruz–Ibarra stated that the ranch was worth ten million pesos,[1] that members of his family worked there, and that the community knew his grandfather owned the land.

The Zetas, an organized criminal enterprise, began to threaten members of Cruz–Ibarra's family in 2011. He testified that, due to these threats, he feared returning to Mexico because the Zetas "believe that [he] ha[s] money," as he would regularly send funds to his family. According to Cruz–Ibarra, members of the Zetas called his mother multiple times and demanded 2,000,000 pesos from her, threatening that, without payment, they would kidnap her youngest daughter. Cruz–Ibarra's mother did not pay the money or call the police; instead, she changed her phone number and relocated to Estación Velasco, a town near Ebano. In 2012, Cruz–Ibarra's mother and his niece travelled to Ebano to deposit funds at a bank in connection with his mother's new job as a school treasurer. According to Cruz–Ibarra, men he believed to be Zetas stopped his mother and niece, demanded the 15,000 pesos his mother had on her person, took his niece, and refused to return her until his mother handed over 80,000 pesos from her personal account. He testified that no other members of his family had been harmed,[2] but he feared he would be kidnapped by the Zetas if he returned to Mexico because

---

1. On the date of the IJ's decision, 10,000,000 Mexican pesos was equivalent to an amount between $780,000 and $790,000.

2. Cruz–Ibarra's personal statement mentions that the Zetas kidnapped his cousin, her husband, and their three children "during the annual feast of the town," but Cruz–Ibarra does not discuss or rely on these events on appeal.

he spent time in the United States and would therefore be perceived as wealthy.

In addition to his own testimony, Cruz–Ibarra provided a declaration from Rafael Quezada, who conveyed that "Cruz[-]Ibarra is [an] honest, pacific and very hardworking person with who[m he] ha[s] lived with in [Ebano] personally and professionally." Quezada also stated that Cruz–Ibarra left Mexico because of "the high risk of insecurity" in the country and because "nobody would want to be subject to violence." In contrast, Cruz–Ibarra's own declaration stated that he "came to the United States to help [his] family economically." Cruz–Ibarra also submitted two news articles about drug violence in Ebano and San Luis Potosí. The IJ denied Cruz–Ibarra's petition for withholding of removal and denied him protection under the CAT. She found Cruz–Ibarra to be credible but noted that he did not testify as to how he knew or was related to Quezada, that Quezada's declaration was "generic," that Cruz–Ibarra did not "provide any declarations from any of his family members," and that he did not provide anything to show that corroborating evidence was unavailable.

The IJ determined that Cruz–Ibarra did not meet his burden of production because he came forth with "very little corroboration" for his account considering the type of evidence that would be expected when a petitioner claims that threats or other incidents "were because of his membership in a particular social group."

Nevertheless, the IJ addressed the merits of Cruz–Ibarra's claim. She determined that Cruz–Ibarra did not show that he was persecuted in the past—and thus future persecution was not presumed—because he had not connected any negative experience that his family members had to himself or his status. The IJ also found that Cruz–Ibarra did not otherwise establish that he was likely to suffer future persecution if removed to Mexico because he did not demonstrate an objective fear of persecution based on a protected ground. In reaching this conclusion, the IJ reasoned that the Mexican government has taken action to stop crime and gang activities, but Cruz–Ibarra's mother did not contact the police and therefore did not give law enforcement an "opportunity to intervene and assist the family members." Further, Cruz–Ibarra's grandparents, father, and some of his brothers have continued to live and work in Ebano without incident.

The IJ also determined that Cruz–Ibarra did not sufficiently show a connection between his fear of persecution and membership in a "particular social group." The IJ found that Cruz–Ibarra had not established that he was "a wealthy landowner or that anyone perceive[d] him as such." To that end, the IJ noted that Cruz–Ibarra had stated that he came to the United States to help his family financially and that, though his grandfather owns land, the fact that Cruz–Ibarra sent money to support his family undercut his argument that they are wealthy. The IJ also stated that Cruz–Ibarra did not provide corroboration for the landownership or any other evidence that people in the community saw the family as landowners collectively. Additionally, the IJ found that Cruz–Ibarra had not shown that he or any member of his family was "singled out for persecution because of the fact that they owned land in the community," as the incidents involving his mother did not occur on account of landownership. Rather, Cruz–Ibarra's mother was a target for extortion, and he did not connect that extortion "to her being a wealthy landowner."

Moreover, the IJ found that perceived wealth—whether on the basis of landownership or the fact that Cruz–Ibarra resided

in the United States—is not "a basis for inclusion in a particular social group" for purposes of withholding of removal. According to the decision, a class of individuals defined in this way lacks "particularity" and its defining characteristics are not "immutable." The IJ noted that essentially everyone in Mexico is at risk from the Zetas and similar parties and that the term "particular social group" in the standard for withholding of removal "is not a catchall for persons alleging harm."

Regarding the CAT claim, the IJ found that Cruz–Ibarra feared violence at the hands of the Zetas rather than a governmental entity or official, and he did not present evidence to suggest "that any government official would know about any torture to [Cruz–Ibarra] and turn a blind eye."

On appeal, the BIA found that the IJ's findings of fact were not clearly erroneous. It agreed that Cruz–Ibarra "did not demonstrate eligibility for withholding of removal," and it adopted the IJ's reasoning on this point. The opinion stated that the record "d[id] not reflect that [Cruz–Ibarra] suffered harm rising to the level of persecution, or that he would be targeted by anybody because of membership in any cognizable social group." The BIA also "agree[d] with the [IJ]'s conclusion" that Cruz–Ibarra did not show that he was eligible for protection under the CAT, as "he ha[d] not demonstrated that he is more likely than not to be tortured in Mexico, by or with the acquiescence (to include the concept of willful blindness) of a government official upon return." The BIA dismissed the appeal and ordered Cruz–Ibarra's removal.

### JURISDICTION AND THE STANDARD OF REVIEW

Under 8 U.S.C. § 1252, this court may review "a final order of removal." When,

as here, "the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the [IJ]'s decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder,* 557 F.3d 429, 435 (6th Cir.2009) (citing *Morgan v. Keisler,* 507 F.3d 1053, 1057 (6th Cir.2007)). To the extent the BIA adopts the IJ's reasoning, however, we also review the IJ's determination. *Id.* (citing *Patel v. Gonzales,* 470 F.3d 216, 218 (6th Cir.2006)).

In removal matters, we review both the BIA's and IJ's factual findings "under the highly deferential substantial-evidence standard." *Harmon v. Holder,* 758 F.3d 728, 732 (6th Cir.2014) (citing *Khalili,* 557 F.3d at 435). "We review the legal conclusions of the BIA de novo...." *Harmon,* 758 F.3d at 732 (citing *Flores v. U.S. Citizenship & Immigration Servs.,* 718 F.3d 548, 551 (6th Cir.2013)).

### DISCUSSION

#### I. The Claim for Withholding of Removal

■ Cruz–Ibarra argues that the BIA erred in finding that he had not demonstrated that he was likely to be persecuted or that "he would be targeted by anybody because of membership in any cognizable social group" if removed. Cruz–Ibarra claims the BIA and IJ "ignored [his] credible testimony" concerning his family's wealth and landownership. He also claims the BIA and IJ "ignored numerous refinements" in the standard for what constitutes a "particular social group," including this circuit's gloss on the "visibility" requirement that a group's members need not be "recognizable 'on-sight.'" *See Umaña–Ramos v. Holder,* 724 F.3d 667, 672–73 (6th Cir.2013). The thrust of his position is that wealthy landowners and Mexican nationals returning from the United States

qualify as particular social groups for withholding purposes and that he established that he was a member of these groups.

We need not, however, resolve these issues to dispose of the petition for review. The BIA adopted the IJ's reasoning and found that "[o]verall, the evidence does not reflect ... that [Cruz–Ibarra] would be targeted by anybody because of membership in any cognizable social group." Likewise, the IJ found that, regardless of the validity of the asserted social groups or whether Cruz–Ibarra was actually a member of these groups, he had not shown that anyone targeted him or any member of his family on the basis of landownership or the fact that he was a Mexican national living in the United States. Substantial evidence supports these findings.

To qualify for withholding of removal, an individual must establish "that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal." 8 C.F.R. § 1208.16(b)(2); *see also Bonilla–Morales v. Holder*, 607 F.3d 1132, 1138 (6th Cir.2010). While "persecution" is not statutorily defined, *Haider v. Holder*, 595 F.3d 276, 286 (6th Cir.2010), it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Mohammed v. Keisler*, 507 F.3d 369, 371–72 (6th Cir.2007) (quoting *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir.2006)). In general, the categories of events that may constitute persecution include "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider*, 595 F.3d at 286–87 (quoting *Zacarias v. Gonzales*, 232 Fed.Appx. 458, 462 (6th Cir.2007)). Proof of persecution on the basis of a protected ground is necessary to a withholding claim, and an adverse determination on this element, supported by substantial evidence, obviates the need to address other substantive challenges to the BIA's denial of withholding. *See, e.g., Nunez–Avina v. Lynch*, 628 Fed.Appx. 418, 420, No. 15–3058, 2015 WL 5946426, at *2 (6th Cir. Oct. 13, 2015); *Santana v. Lynch*, 627 Fed.Appx. 447, 450, No. 14–3663, 2015 WL 5670539, at *3 (6th Cir. Sept. 28, 2015).

Cruz–Ibarra concedes that he did not personally suffer harm in Mexico. While Cruz–Ibarra testified that extortion attempts were made on his mother and that she was forced to give money to cartel members to retrieve her granddaughter, he provided no evidence that connected these incidents with the fact that his mother or other members of his family owned land or the fact that he was in the United States. He also admitted that his grandfather, his father, and some of his brothers worked on his grandfather's land and lived in an area where violence took place, but they did not suffer harm. Nothing in the news articles Cruz–Ibarra submitted suggests that violence in San Luis Potosí was directed particularly at landowners or individuals who spent time in the United States. Taken as a whole, the record provides substantial support for the BIA's decision. Therefore, we need not address whether wealthy landowners or returning Mexican nationals qualify as protected groups under the INA or whether Cruz–Ibarra was in fact a wealthy landowner. *See Nunez–Avina*, 628 Fed.Appx. at 420, 2015 WL 5946426, at *2; *Santana*, 627 Fed.Appx. at 450, 2015 WL 5670539, at *3.

Cruz–Ibarra also maintains that the administrative decisions incorrectly found that he did not provide sufficient corroborating evidence, but we likewise need not reach this issue. Cruz–Ibarra's failure to show that, if removed, he would be targeted for persecution on the basis of his membership in a protected group provides an

independent rationale for denying his withholding claim. Moreover, the BIA's opinion did not discuss—not to mention rely on—the IJ's corroboration finding, so the issue is not properly before the court. *See Urbina–Mejia v. Holder,* 597 F.3d 360, 370 (6th Cir.2010) (Siler, J., concurring); *see also Khalili,* 557 F.3d at 435 (noting that, when the BIA issues a separate written decision, this court only reviews an IJ's opinion to the extent the BIA has adopted it).

In addition, Cruz–Ibarra contends that the BIA and the IJ "[c]ommitt[ed] an error of law" in not finding that "harm to [his] family members also constitute[d] persecution to himself" when considering his withholding claim. Again, the court need not reach this issue. Because a nexus between persecution and membership in a protected group is necessary to Cruz–Ibarra's withholding claim, a favorable ruling for him on this issue would not change the outcome of his petition for review.

## II. The Due Process Claim

■ Cruz–Ibarra also claims that the BIA and the IJ violated his due process rights by failing to consider his testimony related to "[t]he critical nexus to a particular social group." Cruz–Ibarra did not present his due process claim to the BIA. In most instances, petitioners are required to "exhaust[ ] all administrative remedies available to [them] as of right" before this court may consider an issue. 8 U.S.C. § 1252(d)(1). However, "an alien's due process challenge generally does not require exhaustion" because "the BIA lacks authority to review constitutional challenges." *Sterkaj v. Gonzales,* 439 F.3d 273, 279 (6th Cir.2006). But if a due process claim points to "correctable procedural errors," it must be presented to the BIA. *Id.* Had the IJ not considered certain evidence, the BIA could have corrected this mistake at the administrative level. Therefore, we cannot consider his due pro-

cess claim. *See Gaye v. Lynch,* 788 F.3d 519, 527 (6th Cir.2015). To the extent Cruz–Ibarra contends that the BIA *independently* violated his due process rights, his claim lacks merit. He has not shown a defect in the proceedings because both the BIA and the IJ properly considered the evidence in the record—rather than ignoring it as Cruz–Ibarra claims.

## III. The Claim for Protection Under the CAT

Cruz–Ibarra has waived his ability to challenge the BIA's ruling on his CAT claim. His brief only refers to the CAT once, and this reference is unaccompanied by any significant argument. Matters "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Robinson,* 390 F.3d 853, 886 (6th Cir.2004) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)).

**REVIEW DENIED.**