NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0108n.06

Case Nos. 21-3669/3141

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 08, 2024
KELLY L. STEPHENS, Clerk

JOSE ANTONIO RODRIGUEZ-VILLEDA,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

O P I N I O N

Before: GIBBONS, BUSH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. In these consolidated appeals, Jose Antonio Rodriguez-Villeda petitions for review of two Board of Immigration Appeals ("BIA" or "the Board") orders: one order affirming, without opinion, an immigration judge's ("IJ") decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") and granting him voluntary departure; and a second order denying his motion for reopening and reconsideration. Rodriguez-Villeda argues that his case should be remanded to the Board because the IJ erred in concluding that he failed to demonstrate that he is part of a cognizable particular social group ("PSG"). Because the BIA and IJ properly found Rodriguez-Villeda's proposed PSG non-cognizable, we deny the petitions for review.

**I.**

*Factual Background.* Rodriguez-Villeda is a native and citizen of Mexico. He entered the United States in June 2001 at the age of five. He stayed in the country and later was permitted to remain in the United States under the Deferred Action for Childhood Arrivals ("DACA"). His DACA status was terminated in October 2018, however, after he was twice arrested for possession of marijuana.[1] The Department of Homeland Security ("DHS") subsequently initiated removal proceedings against Rodriguez-Villeda for being a noncitizen present in the United States without having been admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i).

On December 11, 2018, Rodriguez-Villeda, through counsel, filed an application for asylum, withholding of removal, and protection under the CAT, and he sought voluntary departure in the alternative. He based his application for asylum on his purported fear of future persecution as a member of a particular social group, which he defined as "young Mexicans who came to the United States as children, and [who have since] been [Anglicized;] their cultural appearance makes them a target and at a higher risk of crime and violence in Mexico." (A.R. 608).

The IJ held a hearing on Rodriguez-Villeda's applications for relief at which both he and his brother, Carlos Rodriguez, testified. According to their testimony, Rodriguez-Villeda has not returned to Mexico since he left the country at five years old. His grandmother, aunts, and cousins still reside in Mexico, where several of them have fallen victim to crime. For instance, in 2017, one of Rodriguez-Villeda's cousins was assaulted by what his family believed to be a gang or the cartel, as he had started "hanging around the wrong crowds." (*Id.* at 639–40). That same cousin was taken into police custody after the attack and held for one or two years before being released on bond; Rodriguez-Villeda and his family attributed the duration of his cousin's detention to

---

[1] Both offenses were later amended to lesser charges.

corruption within the police department. Further, in 2018, two of Rodriguez-Villeda's aunts were robbed of cash in Mexico. And during that same year, his grandmother, who operated a business out of her house, was robbed twice.

In addition to his family members' experiences, Rodriguez-Villeda recounted a story about two people who were deported to Mexico in 2018 and murdered within a week of their arrival. He expressed his fear that if he returned to Mexico, he would be targeted for harm or recruitment by the gangs, cartels, or other criminals because of his acculturation. In that regard, he stressed that because he has lived much of his life in the United States, he would be perceived as different or privileged for reasons such as his "good" clothing and mastery of English. (*Id.* at 615, 621). Similarly, Carlos Rodriguez was afraid his brother would be robbed and harmed because he is "Americanized" and because people would believe he is wealthy. (*Id.* at 658).

*Procedural Background.* Following the merits hearing, the IJ denied Rodriguez-Villeda's application for asylum, withholding of removal, and protection under the CAT and granted him voluntary departure. The IJ first found that while Rodriguez-Villeda and his brother were credible witnesses, Rodriguez-Villeda could not satisfy the requirements for his applications. Regarding his asylum application, the IJ concluded that Rodriguez-Villeda's PSG was not legally cognizable and that even if it were, Rodriguez-Villeda did not show a nexus between the harm he feared and a protected ground. Specifically, the IJ found that the PSG was neither particularly defined nor socially distinct within Mexican society and that if he were targeted for harm, it would not be because of his membership in his particular group. With respect to the withholding of removal application, the IJ found that other than generalized statements in country reports, Rodriguez-Villeda provided no evidence to support the conclusion that the government was unable or unwilling to protect him. Finally, as to protection under the CAT, the IJ found that Rodriguez-

Villeda had not provided sufficient evidence to establish past torture or that the Mexican government—or gangs, with the government's consent—would torture him upon his return.

Rodriguez-Villeda timely appealed the IJ's decision to the BIA and the Board affirmed the IJ's decision without a separate opinion. Rodriguez-Villeda then sought review of that decision before this court. *Rodriguez-Villeda v. Garland*, No. 21-3141 (6th Cir. filed Feb. 17, 2021). He also filed a motion to reopen and reconsider, which the Board denied. Rodriguez-Villeda promptly appealed that denial to this court. We then granted Rodriguez-Villeda's motion to consolidate his two petitions for review of the BIA decisions.

**II.**

This court has jurisdiction to review the final decision of the BIA affirming the IJ's denial of asylum, withholding of removal, and relief under the CAT. *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005). Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming, we review the Board's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). But when the BIA affirms and expressly adopts the IJ's findings, we also review the IJ's decision. *Id.* We consider questions of law de novo but owe substantial deference to the BIA's interpretation of the INA and accompanying regulations. *Id.*

We review findings of fact for substantial evidence. *Gaye v. Lynch*, 788 F.3d 519, 525 (6th Cir. 2015). Under the substantial evidence standard, we "defer to the agency's findings of fact if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012)). That is, "[t]o reverse under the substantial evidence standard, the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the [applicant] alleged." *Mostafa v. Ashcroft*, 395

F.3d 622, 624 (6th Cir. 2005) (quoting *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003)); *see also* 8 U.S.C. § 1252(b)(4)(B).

## III.

As an initial matter, Rodriguez-Villeda does not challenge the Board's denial of his motion to reopen and reconsider. While he put forth new evidence of hardship and argued that certain procedural actions of the Board violated his constitutional rights in his motion to reconsider, he makes no mention of these issues in either his opening brief or his reply to this court. He also does not advance any argument that he qualifies for CAT protection. An appellant abandons issues not raised and argued in his initial brief on appeal. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016) (citing *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006)); *see also Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument addressing the issue in his brief). Because Rodriguez-Villeda failed to challenge the denial of his motion to reconsider and his entitlement to CAT protection in his current appeal, he has abandoned any such challenge.

The single remaining claim before this court is the Board's summary affirmance denying his application for asylum and withholding of removal. Rodriguez-Villeda argues, among other things, that remand is necessary because the IJ's decision relied on now-vacated caselaw in its PSG analysis. Specifically, he contends that the IJ erred in relying on the now-overturned first decision in *Matter of A-B-* ("*A-B- I*") to support the finding that his particular social group is not cognizable. 27 I.&N. Dec. 316 (A.G. 2018). Because there is substantial evidence to support the IJ's findings that Rodriguez-Villeda has not established the existence of a cognizable PSG or a valid nexus, his argument fails.

To obtain asylum, Rodriguez-Villeda must establish that he is a "refugee," 8 U.S.C. § 1158(b)(1)(A)-(B)(i), who is "unable or unwilling" to return to Mexico "because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). And to qualify for withholding from removal, he must establish that his "life or freedom would be threatened" in Mexico "because of" his membership in a "particular social group." 8 U.S.C. § 1231(b)(3)(A). When an applicant seeks relief based on his membership in a proposed PSG, he must establish three things. First, he must show that the proposed PSG's members share a "common, immutable characteristic." *Urbina–Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (citation omitted). Next, he has to satisfy the "particularity" requirement, meaning that the group can be described in terms sufficiently distinct such that the community would recognize it as a discrete class of persons. *Al–Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009). Finally, he must demonstrate that the group maintains social visibility within society. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015).

Once an applicant establishes his membership in a PSG, he must show a nexus between the past harm or feared future persecution and one of the statutorily protected grounds. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). That is, to satisfy the nexus requirement, Rodriguez-Villeda must establish that he is likely to be persecuted, at least in part, because of his membership in his claimed social group. *See Murillo-Oliva v. Garland*, No. 21-3062, 2022 WL 14729879, at *3 (6th Cir. Oct. 26, 2022) (citation omitted). In this regard, we have previously concluded that "[p]ointing to widespread gang violence alone is insufficient." *Id.*; *see also Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). Rather, Rodriguez-Villeda must connect the persecution that he fears to his membership in the claimed PSG. *See Murillo-Oliva*, 2022 WL 14729879, at *3 (citing *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019)).

The burdens of proof differ for Rodriguez-Villeda's asylum and withholding-of-removal claims. While for asylum, he must show a "reasonable possibility" that he will suffer persecution, 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(2)(i)(B), for withholding of removal, he must prove a "clear probability" of future persecution. *Al-Ghorbani*, 585 F.3d at 993–94. And with respect to the nexus requirement, for asylum, he must show that it was one "central" reason for his persecution, 8 U.S.C. § 1158(b)(1)(B)(i), while for withholding of removal, he must demonstrate that his membership in a PSG was at least one reason for his persecution. 8 U.S.C. § 1231(b)(3). Regardless of the standard, Rodriguez-Villeda's claims fail.

*Particular Social Group.* The Board's decision that Rodriguez-Villeda's proposed PSG— "young Mexicans who came to the United States as children, and [who have since] been [Anglicized;] their cultural appearance makes them a target and at a higher risk of crime and violence in Mexico"—lacks particularity and social visibility is supported by substantial evidence. (A.R. 608). His effort to establish the existence of the described PSG fails on two fronts. First, as the IJ confirmed, Rodriguez-Villeda's claim is premised on his fear of being subjected to general crime and gang violence in Mexico. But such generalized fears do not satisfy the particularity requirement. *See Zaldana Menijar*, 812 F.3d at 500–01; *see also Patel v. Gonzales*, 126 F. App'x 283, 292 (6th Cir. 2005). Moreover, as the IJ noted, Rodriguez-Villeda "failed to show through any evidence of record that the proposed group is seen as a group by the society in Mexico." (A.R. 534). *See Umana-Ramos*, 724 F.3d at 672 (explaining that social visibility means "the extent to which members of society perceive those with the relevant characteristic as members of a social group") (quoting *Koudriachova v. Gonzales*, 490 F.3d 255, 261 (2d Cir. 2007)).

Second, we have consistently rejected proposed PSGs premised solely on increased susceptibility to crime due to factors like Americanization or being perceived as wealthy. *See,*

*e.g.*, *Cano-Huerta v. Holder*, 568 F. App'x 371, 373 (6th Cir. 2014) ("[C]riminal exploitation motivated by the perceived wealth of former inhabitants of the United States is not tantamount to persecution based on a protected ground."); *Renteria-Cortes v. Holder*, 563 F. App'x 466, 468 (6th Cir. 2014) ("Being perceived as wealthy as a result of living in the United States is not a group membership recognized by the INA."); *Giron-Giron v. Garland*, No. 21-3472, 2022 WL 216568, at *3 (6th Cir. Jan. 25, 2022) ("[A] nebulous term like 'prosperous' can hardly 'provide a clear benchmark for determining who falls within the group.'") (quoting *Matter of M-E-V-G-*, 26 I.&N. Dec. 227, 239 (BIA 2014)). Two of the defining features of Rodriguez-Villeda's proposed PSG are Americanization and perceived wealth. Rodriguez-Villeda has not shown how his proposed PSG meaningfully differs from those previously rejected and points to no countervailing authority suggesting that his group should receive protection.

Rodriguez-Villeda resists this conclusion, contending that his proposed PSG is distinguishable from those cited in the IJ's decision because his proposed PSG focuses on the length of his time in the United States and does not directly point to wealth. Yet, his own testimony belies this argument. At his hearing, Rodriguez-Villeda relayed his belief that he would be viewed differently because of his "privilege" in being in the United States and things like his "good" clothing and mastery of English. (A.R. at 615, 621). Likewise, Carlos Rodriguez expressed his fear that his brother would be robbed or harmed because he was "pretty much Americanized" and because "people would believe he was wealthy." (*Id.* at 658).

*IJ's Reliance on A-B- I.* Rodriguez-Villeda also argues that the IJ applied an incorrect standard in evaluating his proposed PSG because he relied on now-overturned *A-B- I*. But this argument is unpersuasive. While it is true that *A-B- I* was vacated in the *Matter of A-B-* ("*A-B-III*"), the vacatur was for reasons unrelated to the longstanding PSG requirements, including

particularity and social visibility. 28 I.&N. Dec. 307 (A.G. 2021). That is, *A-B- III* abrogated *A-B- I*'s rejection of survivors of domestic violence as a potential PSG. *See id.* at 307–08. Moreover, even if *A-B- I* was vacated, our own precedent makes clear that the evidence presented by Rodriguez-Villeda does not give way to a cognizable PSG.[2]

*Nexus.* Next, even if we were to accept Rodriguez-Villeda's argument that the IJ's reliance on *A-B- I* somehow altered the PSG analysis and thus the outcome of the decision, we have declined to remand where doing so would be futile. And where the petitioner has failed to demonstrate the nexus between the harm feared and a protected ground, we have found that remand would be futile. *See Murillo-Oliva*, 2022 WL 14729878, at *3; *see also Santana v. Lynch*, 627 F. App'x 447, 451 (6th Cir. 2015). That is the case here. To demonstrate a nexus, Rodriguez-Villeda needed to establish that he is likely to be persecuted in Mexico because of his PSG. But Rodriguez-Villeda does not identify any specific person or persons who he fears or provide evidence that the cartel or gangs would harm him because of his membership in his proposed PSG or that his group is one that is socially visible within Mexico. He has thus failed to demonstrate nexus and any potential reliance on the vacated caselaw would "at most amount to harmless error." *See Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *5 (6th Cir. Jan. 18, 2023) (citing *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010)). Because these findings are dispositive as to Rodriguez-Villeda's applications for asylum and withholding of removal, we are not compelled to reach a contrary conclusion from that of the Board.

---

[2] Rodriguez-Villeda also focuses heavily on the timing of the Board's decision. He claims the Board, in summarily affirming the IJ's decision, ignored a key change in law—namely the vacatur of *A-B- I*. But the relevant vacatur had not yet happened when the Board upheld the IJ's decision to reject his applications. *See Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021). The BIA affirmed the IJ's decision on February 4, 2021, while *A-B- III* was not issued until June 16, 2021.

*Standard Language Addendum.* Rodriguez-Villeda also argues that the IJ's incorporation of a standard language addendum of law into the decision constitutes an "invalid practice under Sixth Circuit law." (Dkt. no. 54, 14). It is unclear whether he advances this issue as one independently supporting remand. His complaint in this regard centers on this court's requirement that litigants put all their arguments in one document so that we need not look across pleadings. *See Northland Ins. Co v. Stewart Title Guar. Co.*, 327 F.3d 448, 452–53 (6th Cir. 2003). But not only is this rationale inapplicable in this context, Rodriguez-Villeda concedes that he can find no precedent in this court to support his assertion. Thus, we reject this argument.

*Due Process.* Finally, Rodriguez-Villeda contends the Board violated his due process rights. We review de novo alleged due process violations in immigration proceedings. *See Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). A noncitizen must establish both "error and substantial prejudice" to "prevail on a due process challenge to deportation proceedings." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). We have long held, however, that the BIA's streamlined review does not itself alone violate such an applicant's rights to due process. *See, e.g.*, *Karsh v. Barr*, 788 F. App'x 360, 362 (6th Cir. 2019) (citing *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003)). Rodriguez-Villeda argues that because the Board summarily affirmed the IJ, whose decision relied on *A-B- I*, his due process rights were violated. But this claim is conclusory. And as previously noted, any reliance on *A-B- I* is harmless given this court's jurisprudence concerning the establishment of a PSG. Rodriguez-Villeda has not been denied justice, he simply disputes the IJ's assessment of his claims. *See Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001).

## IV.

For the foregoing reasons, we deny Rodriguez-Villeda's petitions for review.